Cavanagh, J.
These cases call on this Court to interpret the meaning and applicability of the phrase “mutual mistake of fact” as it is used in MCL 211.53a. In each of these cases, petitioner Ford Motor Company (Ford) filed a personal property statement with the appropriate taxing jurisdiction, the respective respondents. But Ford misreported some of the information in its personal property statements. Because respondents’ assessors accepted and relied on Ford’s personal property statements as accurate when calculating Ford’s tax liability, respondents issued tax bills for amounts in excess of what would have been due had the statements *429 been accurate. Ford paid the taxes, but it later sought refunds under MCL 211.53a when it discovered the errors, claiming the excessive taxes were paid because of a mutual mistake of fact.
We hold that Ford has stated valid claims of mutual mistake of fact that were intended to be remedied under MCL 211.53a. In these cases, Ford and respondents shared and relied on an erroneous belief about a material fact that affected the substance of the transactions. Our conclusion is consistent with the Legislature’s intent and the peculiar meaning the term “mutual mistake of fact” has acquired in our law. In dismissing Ford’s petitions, the Michigan Tax Tribunal (MTT) adopted a wrong principle and misapplied the law by failing to give the proper meaning to the legal term “mutual mistake of fact.” Further, we hold that the MTT abused its discretion when it failed to allow Ford to amend its petition against respondent Bruce Township. Therefore, we reverse the judgments of the MTT and the Court of Appeals, and we remand these cases to the MTT for further proceedings consistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
In each of these cases, Ford filed a personal property statement with the appropriate taxing jurisdiction, the respective respondents. But Ford mistakenly reported some of the information in its personal property statements and, therefore, overstated the quantity of taxable property it owned. Because respondents’ assessors accepted and relied on Ford’s personal property statements as accurate when calculating Ford’s tax liability, respondents issued excessive tax bills. Without any party realizing that the tax bills were excessive, Ford paid the amounts due and respondents accepted Ford’s payments.
*430 Ford eventually discovered the errors in its personal property statements. Ford then filed three separate petitions with the MTT — one against the city of Romeo (which should have been filed against Bruce Township), one against the city of Sterling Heights, and one against the city of Woodhaven and Wayne County. In each petition, Ford argued that it paid excessive taxes because of a mutual mistake of fact and, thus, was entitled to a refund under MCL 211.53a. MCL 211.53a provides:
Any taxpayer who is assessed and pays taxes in excess of the correct and lawful amount due because of a clerical error or mutual mistake of fact made by the assessing officer and the taxpayer may recover the excess so paid, without interest, if suit is commenced within 3 years from the date of payment, notwithstanding that the payment was not made under protest.
Even though Ford filed three separate petitions, our analysis of the issue presented in these cases is the same. But because each petition was treated separately by the MTT and the Court of Appeals, we will detail each petition’s relevant history.
A. BRUCE TOWNSHIP
After learning that it double reported certain assets, Ford filed a petition with the MTT against the city of Romeo.[1] Specifically, Ford claimed in this petition that it was entitled to a refund from Romeo under MCL 211.53a because a mutual mistake of fact occurred regarding the taxability of Ford’s personal property. After considering the matter, the MTT sua sponte issued an order dismissing Ford’s petition. The MTT concluded that it lacked subject-matter jurisdiction *431 under MCL 205.735 because Ford did not protest the assessments to the Romeo Board of Review.[2] Further, the MTT held that the assessments at issue were not the result of a mutual mistake of fact because the assessments were solely the result of Ford’s failure to prepare accurate statements. Accordingly, the MTT reasoned that it did not have subject-matter jurisdiction under MCL 211.53a because there was no mutuality of mistake. In support of this conclusion, the MTT relied on its opinion in Gen Products Delaware Corp v Leoni Twp, 2001 WL 432245 (Docket No. 249550, March 8, 2001), and on the Court of Appeals majority opinion in Wolverine Steel Co v Detroit, 45 Mich App 671; 207 NW2d 194 (1973). Finally, the MTT opined that Ford *432 should have sought relief from the Michigan State Tax Commission under MCL 211.154.
Ford appealed to the Court of Appeals, but Romeo moved to dismiss the appeal because it was not the taxing jurisdiction that assessed Ford’s personal property. While not addressing the merits of the petition, the Court of Appeals denied Romeo’s motion, reversed the MTT order, and remanded the matter to the MTT to address the issue of the necessary joinder or substitution of the parties. Ford Motor Co v Romeo, unpublished order of the Court of Appeals, entered September 13, 2002 (Docket No. 240649). Ford then filed a motion with the MTT to amend its petition to substitute Bruce Township for Romeo, as well as to make minor corrections. Ford’s proposed amended petition again maintained that under MCL 211.53a, it was entitled to a refund because its personal property was reported and assessed twice, which Ford claimed was a mutual mistake of fact. Further, Ford argued that the MTT had jurisdiction to hear the case under MCL 205.731(b).[3]
The MTT granted Ford’s motion to substitute Bruce Township for Romeo. But the MTT denied Ford’s motion for leave to file an amended petition and dismissed the petition on the ground that Ford had still failed to invoke the MTT’s subject-matter jurisdiction. *433 Once again, the MTT held that because there was not a mutual mistake of fact, it lacked jurisdiction under MCL 211.53a. Further, the MTT concluded that it lacked subject-matter jurisdiction because the proposed amended petition covered two parcels of property; therefore, the proposed petition violated the MTT’s rule of procedure, 1999 AC, R 205.1240, which prohibits a petition from covering more than one parcel.[4] Ford appealed to the Court of Appeals.
In a split, published decision, the Court of Appeals affirmed the MTT’s order. 264 Mich App 1; 689 NW2d 764 (2004). First, the Court of Appeals majority opined that the MTT had subject-matter jurisdiction over Ford’s petition because the MTT is vested with the power and authority to adjudicate tax refund cases, citing In re AMB, 248 Mich App 144, 166-167; 640 NW2d 262 (2001). But the Court of Appeals majority agreed with the MTT that Ford was not entitled to relief under MCL 211.53a because there was not a mutual mistake of fact.
In this regard, the Court of Appeals referenced the history surrounding MCL 211.53a, as well as Black’s Law Dictionary (7th ed), and opined that MCL 211.53a “requires that both the assessing officer and the taxpayer have the same erroneous belief regarding the same material fact, which belief directly caused both the excess assessment and excess payment of taxes.” Bruce Twp, supra at 9. Notably, the Court of Appeals majority preferred its definition of “mutual mistake of fact” to that articulated by the MTT in Gen Products Delaware Corp, supra, because the majority believed that the MTT’s characterization was “more compli *434 cated than necessary.” Id. at 11.[5] Proceeding under its own understanding of MCL 211.53a, the Court of Appeals majority then concluded that Bruce Township and Ford were not operating under the same mistake of fact. According to the majority, the mistake was not mutual because Ford’s mistake concerned its erroneous belief that certain assets were taxable, whereas Bruce Township’s erroneous belief was that Ford’s personal property statement was accurate. Moreover, the Court of Appeals majority reasoned that there was no mutual mistake of fact giving rise to a remedy under MCL 211.53a because the excessive tax was a direct result of Ford’s sole mistake. Additionally, the majority rejected the proposition that the treatment of the phrase “mutual mistake” in contract law cases was applicable to property tax cases.
Therefore, the Court of Appeals majority held that the MTT properly concluded that Ford was not entitled to a refund under MCL 211.53a because there was no mutual mistake of fact. Moreover, the majority reasoned that the MTT properly denied Ford’s motion to amend its petition because the amendment would have been futile in light of the MTT’s conclusion that relief could not be granted under MCL 211.53a. Accordingly, the Court of Appeals majority held that the MTT had the right and duty to dismiss Ford’s petition, and it affirmed the order of the MTT.
The Court of Appeals dissent, however, would have reversed the order of the MTT. The Court of Appeals dissent agreed with the majority that the MTT had subject-matter jurisdiction to adjudicate Ford’s claim, but for slightly different reasons. According to the dissent, the MTT confused the issue of subject-matter *435 jurisdiction with whether Ford stated a claim under MCL 211.53a for which relief could be granted. Further, the dissent opined that the MTT had subject-matter jurisdiction under MCL 205.731(b). So when the MTT dismissed Ford’s petition on the basis that it lacked subject-matter jurisdiction because Ford failed to state a claim under MCL 211.53a, the dissent would have held that the MTT erred as a matter of law.
Unlike the majority, however, the dissent reasoned that the MTT also erred in determining that Ford failed to allege a mutual mistake of fact under MCL 211.53a. The dissent reasoned that the MTT’s interpretation of a mutual mistake of fact was excessively narrow and would effectively eliminate personal property from the scope of MCL 211.53a. Relying in part on Carpenter v Ann Arbor, 35 Mich App 608; 192 NW2d 523 (1971), the Court of Appeals dissent reasoned that both Ford and Bruce Township shared the same factual mistake, namely, that all the property listed in Ford’s statement was taxable. Because both parties relied on this factual mistake, the dissent concluded, the parties operated under a mutual mistake of fact. Therefore, the Court of Appeals dissent would have reversed the order of the MTT on the basis that the MTT erred in applying the law and adopting an incorrect legal principle.
Additionally, the Court of Appeals dissent opined that the MTT did not have the authority to dismiss sua sponte Ford’s petition. Again, the dissent noted that the MTT had subject-matter jurisdiction and, therefore, it should not have dismissed the petition on this ground. Further, the dissent asserted that the MTT’s other basis for dismissing the petition, failure to state a claim under MCL 211.53a, was akin to a ruling under MCR 2.116(C)(8). According to the dissent, this was effectively a grant of summary disposition erroneously is *436 sued without briefing. Finally, the Court of Appeals dissent observed that the MTT’s refusal to allow Ford to amend its petition was an abuse of discretion requiring reversal, and that Ford should be allowed to split the petition into two petitions to comply with the MTT’s rule of procedure.
B. STERLING HEIGHTS
Like what occurred with its personal property statement filed with Bruce Township, Ford later learned that it double reported certain assets on its statement filed with the city of Sterling Heights. So Ford filed a petition with the MTT against Sterling Heights, seeking a refund under MCL 211.53a because a mutual mistake of fact occurred. In lieu of an answer, Sterling Heights moved for summary disposition under MCR 2.116(C)(8) and (10). Ford did not respond to Sterling Heights’ motion. However, the MTT, for reasons virtually identical to those noted earlier in this opinion with regard to the Bruce Township petition, granted the Sterling Heights’ motion to dismiss. For example, the MTT held that Ford did not properly invoke the MTT’s subject-matter jurisdiction because Ford failed to protest the assessments to the Sterling Heights Board of Review. Moreover, the MTT likewise held that Ford’s incorrect reporting on its personal property statement was not a mutual mistake of fact made by both Ford and Sterling Heights. Therefore, the MTT held that it also lacked subject-matter jurisdiction under MCL 211.53a.
In a split, unpublished opinion per curiam, the Court of Appeals affirmed. Ford Motor Co v Sterling Hts, unpublished opinion per curiam of the Court of Appeals, issued October 5, 2004 (Docket No. 246379). The Court of Appeals decision was issued on the same day *437 and by the same panel, resulted in the same split, and employed virtually the same reasoning as in the decision in Bruce Twp, supra.
C. WOODHAVEN AND WAYNE COUNTY
Similar to what transpired with its personal property statements noted above, Ford later learned that its statement to the city of Woodhaven was inaccurate. In this personal property statement, Ford discovered that certain assets that it listed were classified incorrectly, not taxable personal property, retired, or idle. After this discovery, Ford filed a refund petition with the MTT against Woodhaven and Wayne County under MCL 211.53a, alleging that a mutual mistake of fact occurred. Woodhaven and Wayne County then moved to dismiss the petition under MCR 2.116(C)(4), asserting that the MTT lacked subject-matter jurisdiction under MCL 211.53a. The MTT granted the motion to dismiss for the same reasons it dismissed Ford’s other two petitions.
In a split, unpublished opinion per curiam, the Court of Appeals affirmed. Ford Motor Co v Woodhaven, unpublished opinion per curiam of the Court of Appeals, issued October 5, 2004 (Docket No. 246378). Likewise, the Court of Appeals decision was issued on the same day and by the same panel, resultéd as in the same split, and employed the same reasoning in the decisions in Bruce Twp, supra, and Sterling Hts, supra.
Ford sought leave to appeal in all three cases, arguing that the MTT and the Court of Appeals erred in interpreting and applying MCL 211.53a, as well as in denying Ford’s motion to amend its Bruce Township petition. This Court granted leave to consider the judgments of the Court of Appeals. 474 Mich 886 (2005).
*438 II. STANDARD OF REVIEW
Absent fraud, our review of a decision by the MTT is limited to determining whether the MTT erred in applying the law or adopting a wrong legal principle. Catalina Marketing Sales Corp v Dep’t of Treasury, 470 Mich 13, 18-19; 678 NW2d 619 (2004). Further, the central dispute in these cases involves the proper interpretation and application of a statute, MCL 211.53a. This is a question of law that we review de novo. Title Office, Inc v Van Buren Co Treasurer, 469 Mich 516, 519; 676 NW2d 207 (2004).
HI. ANALYSIS
These cases call on this Court to interpret MCL 211.53a.[6] Specifically, these cases require us to interpret the meaning and applicability of the phrase “mutual mistake of fact” as it is used in that statutory provision. As noted earlier in this opinion, MCL 211.53a provides:
Any taxpayer who is assessed and pays taxes in excess of the correct and lawful amount due because of a clerical error or mutual mistake of fact made by the assessing officer and the taxpayer may recover the excess so paid, without interest, if suit is commenced within 3 years from the date of payment, notwithstanding that the payment was not made under protest.
The primary goal of statutory interpretation is to give effect to the Legislature’s intent. Title Office, supra at 519. The first step is to review the statute’s language. Id. And if the statute is plain and unambiguous, then *439 this Court will apply the statute as written. Id. Moreover, this Court is guided by MCL 8.3a, which provides:
All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
Here, we agree with the Court of Appeals majority and dissent that the term “mutual mistake of fact” is a technical term that has acquired a peculiar meaning under the law. Indeed, the term has a defined common-law meaning.
A. THE COMMON-LAW MEANING OF MUTUAL MISTAKE OF FACT
This Court follows the principle that when a statute dealing with the same subject uses a common-law term and there is no clear legislative intent to alter the common law, this Court will interpret the statute as having the same meaning as under the common law. Pulver v Dundee Cement Co, 445 Mich 68, 75; 515 NW2d 728 (1994). Moreover, “common-law meanings are assumed to apply even in statutes dealing with new and different subject matter, to the extent that they appear fitting and in the absence of evidence to indicate contrary meaning.” 2B Singer, Statutes and Statutory Construction (6th ed), § 50:03, p 152. Here, because there is nothing in MCL 211.53a or the General Property Tax Act (GPTA), MCL 211.1 et seq., that shows a legislative intent to alter the meaning the term “mutual mistake of fact” has acquired in our law, we will examine how Michigan’s common law uses the term “mutual mistake of fact.” Additionally, we are also cognizant that “it is a well-established rule of statutory construction that the Legislature is presumed to be *440 aware of judicial interpretations of existing law when passing legislation.” Pulver, supra at 75.
Moreover, because “mutual mistake of fact” is a legal term, resort to a legal dictionary to determine its meaning may also be helpful. People v Jones, 467 Mich 301, 304-305; 651 NW2d 906 (2002). “Mistake” is defined as
1. An error, misconception, or misunderstanding; an erroneous belief. 2. Contracts. The situation in which the parties to a contract did not mean the same thing — or when one or both, while meaning the same thing, formed untrue conclusions about the subject matter of the contract — as a result of which the contract may be rendered void. [Black’s Law Dictionary (7th ed).]
Moreover, “mutual mistake” is defined as
1. A mistake in which each party misunderstands the other’s intent. — Also termed bilateral mistake. 2. A mistake that is shared and relied on by both parties to a contract. • A court will often revise or nullify a contract based on a mutual mistake about a material term. — Also termed (in sense 2) common mistake. [Id.]
Further, “mistake of fact” is defined as “[a] mistake about a fact that is material to a transaction.” Id.
Accordingly, it is discernable from the various definitions set forth above that the term “mutual mistake of fact” is not limited to one particular area of the law; however, it is most commonly applicable to the law of contracts. As such, we disagree with the Court of Appeals majority and the MTT that contract law, or any other area of the law for that matter, has no place in our duty to ascertain the Legislature’s intent and give effect to the common-law term “mutual mistake of fact.”
Many law students are introduced to the law of mistake in their first-year contracts course by reading *441 our decision in Sherwood v Walker, 66 Mich 568; 33 NW 919 (1887)—the famous barren cow case. In Sherwood, the parties contracted for the sale of a cow, and both parties believed and understood that the cow was barren and, thus, useless for breeding. After the contract was entered into, but before delivery, it was discovered that the cow was pregnant. Because the fertile cow was worth considerably more than the agreed-upon price, the defendants refused to deliver the cow. The plaintiff sued for replevin and secured a favorable judgment.
On appeal, this Court reversed that judgment, opining that the trial court should have instructed the jury that if it found that both parties understood that the cow was barren at the time of contracting and it was later discovered that the cow was not barren, then the defendants had a right to rescind under a theory of mutual mistake of fact. Id. at 578. While acknowledging that this was a close case, this Court concluded:
But it must be considered as well settled that a party who has given an apparent consent to a contract of sale may refuse to execute it, or he may avoid it after it has been completed, if the assent was founded, or the contract made, upon the mistake of a material fact,— such as the subject-matter of the sale, the price, or some collateral fact materially inducing the agreement; and this can be done when the mistake is mutual....
“The difficulty in every case is to determine whether the mistake or misapprehension is as to the substance of the whole contract, going, as it were, to the root of the matter, or only to some point, even though a material point, an error as to which does not affect the substance of the whole consideration.” Kennedy v. Panama, etc., Mail Co., L.R. 2 Q.B. 580, 588. [Sherwood, supra at 576-577.]
*442 In light of these principles, this Court held that a mutual mistake of fact occurred. Specifically, the Sherwood Court reasoned that the mistake was mutual, and that the mistake went to the whole substance of the parties’ agreement. In this regard, this Court observed that the parties would not have made the contract of sale except upon the understanding that the cow was barren; therefore, the mistake “went to the very nature of the thing.” Id. at 577.
Our review of otar precedents involving the law of mistake indicates that the peculiar and appropriate meaning that the term “mutual mistake of fact” has acquired in our law has not changed since Sherwood, supra. See, e.g., Lee State Bank v McElheny, 227 Mich 322, 327-328; 198 NW 928 (1924); Goldberg v Cities Service Oil Co, 275 Mich 199; 266 NW 321 (1936); Lake Gogebic Lumber Co v Burns, 331 Mich 315; 49 NW2d 310 (1951); McCleery v Briggs, 333 Mich 522, 525; 53 NW2d 361 (1952); Gordon v City of Warren Planning & Urban Renewal Comm, 388 Mich 82, 88-89; 199 NW2d 465 (1972). And the term’s meaning was not intended to be altered when the Legislature imported the common-law term “mutual mistake of fact” into MCL 211.53a. Accordingly, the phrase “mutual mistake of fact” must be construed and understood consistent with its peculiar meaning. Therefore, consistent with our case law, we interpret the phrase “mutual mistake of fact” in MCL 211.53a to mean an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction.
B. FORD HAS STATED VALID CLAIMS UNDER MCL 211.53a BASED ON MUTUAL MISTAKE OF FACT
Consistent with our interpretation of the legal term “mutual mistake of fact” as it is used in MCL 211.53a, the key issue in these cases is whether there was an *443 erroneous belief shared and relied on by both Ford and respondents about a material fact that affected the substance of the transactions. Under our interpretation of MCL 211.53a, we hold that Ford has stated valid claims of mutual mistakes of fact that were intended to be remedied under MCL 211.53a.
Here, there is little doubt that a mistake occurred — the personal property statements erroneously overstated the amount of Ford’s taxable property, including reporting the same property twice. This resulted in excessive assessments that were paid in full. Further, the mistakes made in these cases are best characterized as mutual. In our view, each assessor’s erroneous belief that Ford’s personal property statement was accurate does not practically differ from Ford’s belief that the statement was accurate. In other words, if Ford believed that it owned certain personal property and reported it properly at the time, then Ford believed that each statement was accurate. Similarly, if each assessor believed that Ford’s statement was accurate, then the assessor likewise believed Ford owned certain personal property and reported it properly. As such, the parties shared a mistaken belief about a material fact that went to the very nature of the transaction — that all the personal property Ford claimed in its personal property statements was taxable. And the parties relied on this shared, erroneous belief— respondents when they assessed the property, and Ford when it subsequently paid the excessive assessments. Therefore, we conclude that Ford has stated valid claims under MCL 211.53a under the theory of mutual mistake of fact because the parties shared and relied on their erroneous beliefs about material facts that affected the substance of the assessments.[7]
*444 C. THE STRUCTURE OF THE GPTA SUPPORTS OUR CONCLUSION THAT FORD HAS STATED VALID CLAIMS OF MUTUAL MISTAKES OF FACT UNDER MCL 211.53a
Further, the nature of personal property statements and the scheme set forth under the GPTA also compels our conclusion that a mutual mistake of fact occurred in these cases. Under the GPTA, personal property located within Michigan is subject to taxation by the applicable taxing authority. MCL 211.1; MCL 211.14. Further, MCL 211.10(1) provides that “[a]n assessment of all the property in the state liable to taxation shall be made annually in all townships, villages, and cities by the applicable assessing officer.. . .” To this end, MCL 211.19(1) provides:
A supervisor or other assessing officer, as soon as possible after entering upon the duties of his or her office or as required under the provisions of any charter that makes special provisions for the assessment of property, shall ascertain the taxable property in his or her assessing district, the person to whom it should be assessed, and that person’s residence.
To assist the assessing officer in ascertaining the taxable personal property in his jurisdiction, MCL 211.19(2) provides that if the assessing officer believes *445 that a person possesses taxable personal property, the assessing officer must require that person to make a statement of all his personal property.[8] Long ago, this Court observed that “[t]he statements made by the property owners are not binding upon the assessors, and are for the purpose of assisting these officers in making a proper and fair assessment of the property. The valuations therein stated are not conclusive, and the assessor must exercise his own judgment in making the assessment.” United States Radiator Corp v Wayne Co, 192 Mich 449, 452; 158 NW 1030 (1916) (internal citation omitted). Indeed, MCL 211.24(l)(f) provides, in relevant part, that when the assessor makes and completes the assessment roll, “[t]he assessor shall estimate the true cash value of all the personal property of each person, and set the assessed value and tentative taxable value down opposite the name of the person.” It farther states that “[i]n determining the property to be assessed and in estimating the value of that property, the assessor is not bound to follow the statements of any person, but shall exercise his or her best judgment.” Id.
We are aware that it is understandably common for assessors to accept personal property statements as accurate and simply base their assessments on the information contained in these statements. However, this common practice does not relieve the assessor of the responsibility to ascertain the taxable property in his jurisdiction and to exercise his best judgment when making an assessment. Moreover, to help an assessor exercise his best judgment and, thus, make an accurate *446 assessment, the GPTA gives the assessor many tools besides the ability to require a personal property statement from a property owner and subsequently rely on the submitted statement.[9] For example, if the assessing officer is satisfied that a personal property statement is incorrect, the assessing officer may examine, under oath, any person the assessing officer believes has knowledge of the personal property. MCL 211.22. Additionally, the assessing officer may send a written request to examine the taxpayer’s property and books, and a certified personal property examiner of the taxing jurisdiction then conducts the examination and audits the records of the taxpayer.
In sum, the GPTA requires the assessor to ascertain what personal property is in his jurisdiction and assess it accordingly. In doing so, the assessor must exercise his best judgment and has many tools available to better fulfill his statutory responsibility. And while the personal property statements greatly assist the assessor in carrying out that responsibility, the assessor is not bound by the taxpayer’s personal property statement. MCL 211.24(1); United States Radiator Corp, supra at 452. So when an assessor simply relies on a taxpayer’s personal property statement and subsequently calculates the assessment on the basis of this information alone — like in these cases — the assessor is effectively adopting the personal property statement as his own belief of what the taxpayer owns. In other words, under these circumstances, there is a mutual understanding of what property the taxpayer owns, and this mutual understanding goes to the very nature of the *447 transaction — an accurate tax assessment. Therefore, the GPTA and the assessment process itself lead us to the inescapable conclusion that mutual mistakes of fact occurred in these cases.
In sum, in these cases, the MTT erred in applying the law and adopting a wrong legal principle. Specifically, the MTT’s interpretation of MCL 211.53a is inconsistent with the peculiar meaning the term “mutual mistake of fact” has acquired in our law. Similarly, the Court of Appeals interpretation and application of MCL 211.53a is at odds with MCL 211.53a and, thus, was erroneous.
D. THE MTT ABUSED ITS DISCRETION IN DENYING FORD’S MOTION TO AMEND ITS PETITION
In light of our holding that Ford has stated valid claims under MCL 211.53a, we must next decide whether the MTT abused its discretion when it failed to allow Ford to amend its petition against Bruce Township. This Court will not reverse a tribunal’s decision to deny a party leave to amend a petition unless the decision constituted an abuse of discretion. Ormsby v Capital Welding, Inc, 471 Mich 45, 53; 684 NW2d 320 (2004). Further, a motion to amend should be granted unless one of the following particularized reasons exists: (1) undue delay, (2) bad faith or dilatory tactics, (3) repeated failure to cure deficiencies by amendment previously allowed, (4) undue prejudice to the opposing party, or (5) futility. Sands Appliance Services, Inc v Wilson, 463 Mich 231, 239-240; 615 NW2d 241 (2000). Here, the MTT denied Ford’s motion to amend because it lacked subject-matter jurisdiction and Ford’s petition covered two parcels in violation of the MTT’s rule of procedure. While the Court of Appeals majority concluded that the MTT had subject-matter jurisdiction to *448 hear Ford’s claim, the majority nonetheless found that the MTT did not abuse its discretion when it denied Ford’s motion because the amendment would be futile in light of its conclusion that Ford failed to state a claim under MCL 211.53a for which relief could be granted. We disagree.
Contrary to the conclusions reached by the MTT and the Court of Appeals majority, Ford has stated valid claims under MCL 211.53a. As such, futility is not a legitimate particularized reason by which the MTT could have denied Ford’s motion to amend. Therefore, the MTT abused its discretion in this respect. Further, we believe that the MTT abused its discretion when it denied Ford’s motion to amend on the basis that the amended petition would violate the MTT’s rule of procedure. In this regard, we find the Court of Appeals dissent persuasive and adopt the following reasoning as our own:
The other reason articulated by the tribunal for dismissal, that the petition covers two parcels of property rather than one, does not rise to the level of the particularized reasons articulated by the Supreme Court for denying a motion to amend a petition. Petitioner’s original petition dealt with five parcels of property. In its proposed amended petition, petitioner limited the petition to two parcels of personal property. The tribunal stated that part of the reason it would not grant the motion to amend was that the proposed amendment violated tribunal rule 1999 AC, R 205.1240 requiring separate petitions for each parcel of property. Principles of statutory interpretation apply to construction of administrative rules. This Court must enforce the intent of the rule drafters by applying the meaning plainly expressed. Lacking ambiguity, judicial interpretation is not permitted. City of Romulus v Dep’t of Environmental Quality, 260 Mich App 54, 65; 678 NW2d 444 (2003). Therefore, we must enforce the plain language of the rule. The plain language of this rule requires *449 petitioner to file two separate petitions for the personal property in question, because it is in different parcels.
Even though the petition was flawed because it dealt with two parcels instead of one, the tribunal should not have dismissed the case and denied petitioner’s motion to amend. The flaw in the petition does not rise to the level of undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. Respondent would not be prejudiced by an amendment separating this petition into two petitions because the facts would not change, and respondent was placed on notice by the original petition. There has been no previous amendment or bad faith on the part of petitioner. Finally, the amendment would not be futile. Given that none of the particularized reasons articulated by the Supreme Court for denying a motion to amend exists, the tribunal abused its discretion in denying petitioner’s motion to amend. Sands Appliance Services, supra at 239-240. [Bruce Twp, supra at 25-27 (GRIFFIN, EJ., dissenting).]
IV CONCLUSION
Simply stated, on the basis of the incorrect personal property statements, Ford believed it owed the assessed taxes and respondents believed that they were entitled to the amounts assessed. Consistent with the Legislature’s apparent intent and our case law, the parties were mutually mistaken about a material fact that affected the substance of the assessments. Accordingly, the MTT and the Court of Appeals erred when they concluded that Ford did not state valid claims of mutual mistake of fact within the meaning of MCL 211.53a. Further, the MTT abused its discretion when it denied Ford’s motion to amend its petition. Therefore, we reverse the judgments of the MTT and the Court of Appeals, and we remand these cases to the MTT for further proceedings consistent with this opinion.
*450 Taylor, C.J., and Weaver, Kelly, Corrigan, Young, and MARKMAN, JJ., concurred with CAVANAGH, J.

 Apparently, Ford double reported certain assets after it completed a sale-leaseback transaction on these assets and failed to dispose of the assets’ historical cost.

 MCL 205.735 provides, in relevant part:
(1) A proceeding before the tribunal is original and independent and is considered de novo. For an assessment dispute as to the valuation of property or if an exemption is claimed, the assessment must be protested before the board of review before the tribunal acquires jurisdiction of the dispute under subsection (2)....
(2) The jurisdiction of the tribunal in an assessment dispute is invoked by a party in interest, as petitioner, filing a written petition on or before June 30 of the tax year involved. Except in the residential property and small claims division, a written petition is considered filed by June 30 of the tax year involved if it is sent by certified mail on or before June 30 of that tax year.... In all other matters, the jurisdiction of the tribunal is invoked by a party in interest, as petitioner, filing a written petition within 30 days after the final decision, ruling, determination, or order that the petitioner seeks to review, or within 35 days if the appeal is pursuant to section 22(1) of 1941 PA 122, MCL 205.22.... An appeal of a contested tax bill shall be made within 60 days after mailing by the assessment district treasurer and the appeal is limited solely to correcting arithmetic errors or mistakes and is not a basis of appeal as to disputes of valuation of the property, the property’s exempt status, or the property’s equalized value resulting from equalization of its assessment by the county board of commissioners or the state tax commission.

 MCL 205.731 provides:
The tribunal’s exclusive and original jurisdiction shall be:
(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.
(b) A proceeding for refund or redetermination of a tax under the property tax laws.

 In its proposed amended petition, Ford identified two parcels of property, 50-043-900-015-00 and 50-043-800-900-11.

 The Court of Appeals majority also disagreed with the interpretation of MCL 211.53a set forth in Wolverine Steel Co, supra.

 Apart from brief references in Spoon-Shacket Co, Inc v Oakland Co, 356 Mich 151; 97 NW2d 25 (1959), and Booker v Detroit, 469 Mich 892 (2003) (Young, J., dissenting), this Court has not had formal occasion to interpret MCL 211.53a.

 We here focus our analysis on MCL 211.53a, because Ford did not seek relief under MCL 211.53b. We must note, however, that MCL 211.53b *444 also deals with mutual mistakes of fact. But MCL 211.53b is somewhat different in scope. For example, MCL 211.53b applies to both overpayments and underpayments, and it permits both the taxpayer and the assessor to file a claim. These claims are also handled initially by a different body, and the time frame in which to bring a claim is different than that provided in MCL 211.53a. However, we must also note that one year after the Court of Appeals decisions in the instant cases, the Legislature amended MCL 211.53b to provide for the possibility of relief if a taxpayer makes an error in preparing its statement of assessable personal property. In the instant cases, however, we need not consider whether the language of MCL 211.53b, as amended, differentiates a mutual mistake from an error on a personal property statement such as Ford’s because the Legislature enacted that amendment after these proceedings commenced and Ford filed its petitions under MCL 211.53a.

 The taxpayer’s personal property statement must he completed and delivered to the assessor on or before February 20 of each year. MCL 211.19(2). And the statement must be in a form prescribed by the State Tax Commission. MCL 211.19(5).

 Significantly, under MCL 211.21, a person who willfully neglects or refuses to make out and deliver a personal property statement is guilfy of a misdemeanor. A person is also guilty of a misdemeanor under MCL 211.21 if he falsely answers questions concerning his personal property.