# STATE OF MICHIGAN

# COURT OF APPEALS

---

JEFFREY SQUIER,

        Claimant-Appellant,

v

DEPARTMENT OF LICENSING &
REGULATORY AFFAIRS/UNEMPLOYMENT
INSURANCE AGENCY and TREES, INC.,

        Appellees.

UNPUBLISHED
July 19, 2016

No. 326459
Osceola Circuit Court
LC No. 14-013941-AE

---

Before: OWENS, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

Claimant-Appellant, Jeffrey Squier, appeals by leave granted the circuit court's February 25, 2015 opinion and order affirming a decision by the Michigan Compensation Appellate Commission (MCAC) in which it denied Squier's application for unemployment benefits under the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.*[1] We affirm in part, reverse in part, and remand to the MCAC for further proceedings.

## I. FACTUAL BACKGROUND

Squier's employment with defendant Trees, Inc. was terminated on November 9, 2012, after he tested positive for marijuana. According to Squier's supervisor, Carl Nowland, Squier and several other employees were required to complete drug tests after an accident occurred at a job site where he was working. Specifically, he testified that a mower ran into a guide wire, resulting in an outage on a transmission line. After his employment was terminated, Squier applied for unemployment benefits, and his claim was eventually denied based on the fact that his employment was terminated after testing positive for marijuana. Squier protested this

---

[1] This Court initially denied Squier's application for leave to appeal, *Squier v Dep't of Licensing & Regulatory Affairs*, unpublished order of the Court of Appeals, entered June 30, 2015 (Docket No. 326459), but, on application to our Supreme Court, this matter was remanded to this Court for consideration as on leave granted, *Squier v Trees, Inc*, 499 Mich 853; 873 NW2d 583 (2016).

-1-

decision, arguing that he was legally permitted to use marijuana under Michigan's Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, but the original denial was upheld. Squier requested a hearing before an administrative law judge (ALJ) shortly thereafter.

At that hearing, Trees, Inc. called Nowland, who testified that Squier's employment "was terminated due to -- drug overdose." Before elaborating, the ALJ interjected and questioned Nowland as to whether Squier's employment was actually terminated or whether he was placed on administrative leave. After Nowland explained that Squier's employment was, in fact, terminated (as well as that Squier was later rehired after completing substance-abuse courses), Trees, Inc.'s counsel ended his questioning of Nowland and sought to admit Squier's drug test results. Squier's counsel objected on hearsay grounds, and the ALJ asked whether his positive test for marijuana was disputed. Trees, Inc.'s counsel answered negatively, and Squier's counsel responded as follows:

> So, our position is that the burden's on the employer and whether he had a medical marijuana card or not it's not, you know, we're not in a position to admit one way or another. We didn't administer the test but they have to prove that he tested positive and, you know, if the test, if they haven't established a chain of custody, if they don't have the people here who administered the test to testify to it's, you know, authenticity . . . then we don't believe they've met their burden and it's not our responsibility to help them do that, I don't think.

The ALJ sustained Squier's counsel's objection, Trees, Inc. did not present any more witnesses, and Squier did not testify or present any witnesses. The ALJ issued a written decision, concluding that because the drug test results were not admitted, there was "no report by a drug testing facility showing a positive result for the presence of a controlled substance." Thus, the ALJ concluded that Squier was not disqualified from receiving unemployment benefits.

Trees, Inc. subsequently sought review before the MCAC, and the MCAC reversed. The MCAC disagreed with the ALJ's decision not to admit the drug test results, concluding that they were admissible pursuant to MCL 421.29(1)(m). Even without the admission of the drug test results, however, Nowland's testimony alone was sufficient to deny Squier's claim for unemployment benefits, the MCAC explained. One member of the MCAC concurred in the MCAC's decision, reasoning that the drug test results were admissible pursuant to the medical-record exception to the hearsay rule as well. Thus, the MCAC reversed the ALJ's decision. After unsuccessfully requesting a rehearing, Squier appealed the MCAC's decision to the circuit court.

The circuit court affirmed the MCAC's decision. It concluded that, because strict adherence to the Michigan Rules of Evidence was not required in administrative hearings such as this, the drug test results were admissible as a report that was routinely and regularly relied on by employers, management, and labor. The circuit court also denied Squier's request to remand the matter to the ALJ for further proceedings, reasoning that doing so would be improper in light of the fact that Squier essentially declined to present evidence before the ALJ. It explained that because Squier merely referenced his medical marijuana card in passing and never attempted to introduce it into evidence, he failed to preserve any defense under the MMMA. This appeal followed.

## II. ANALYSIS

On appeal, Squier argues that the circuit court's and MCAC's decisions should be reversed and that the ALJ's decision should be reinstated. Alternatively, Squier argues, this matter should be remanded for further proceedings to provide him an opportunity to present additional evidence.

### A. STANDARD OF REVIEW

"We review a circuit court's decision on an administrative appeal to determine whether the circuit court applied correct legal principles and whether the court misapprehended or grossly misapplied the substantial-evidence test to the agency's factual findings, which essentially constitutes a clearly erroneous standard of review." *Nason v State Employees' Retirement Sys*, 290 Mich App 416, 424; 801 NW2d 889 (2010). We review unpreserved claims of constitutional error for plain error. *Demski v Petlick*, 309 Mich App 404, 463; 873 NW2d 596 (2015).

### B. HEARSAY TESTIMONY

On appeal, Squier argues that the circuit court's and MCAC's decisions should be reversed because they relied entirely on inadmissible hearsay. Specifically, Squier argues that both the drug test results and Nowland's testimony regarding the drug test results were inadmissible under the Michigan Rules of Evidence for a variety of reasons. Therefore, Squier argues, the circuit court's and MCAC's decisions should be reversed, the ALJ's decision should be reinstated, and he should be determined to be eligible for unemployment benefits.

### 1. DRUG TEST RESULTS

Squier first argues that the circuit court's and MCAC's decisions should be reversed because the drug test results that they relied on in reaching their decisions constituted inadmissible hearsay. We disagree.

Under the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, the Michigan Rules of Evidence are to "be followed as far as practicable, but an agency may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." MCL 24.275. That is, even if evidence is inadmissible under the Michigan Rules of Evidence, it still may nevertheless be admissible in administrative proceedings so long as it is a type of evidence that is "commonly relied upon by reasonably prudent men in the conduct of their affairs." *Id*. This Court has consistently concluded that evidence similar to the drug test results at issue in this case is admissible in administrative proceedings because it is a type commonly relied upon by reasonably prudent men in the conduct of their affairs. See *Rentz v Gen Motors Corp*, 70 Mich App 249, 253; 245 NW2d 705 (1976) (concluding that a doctor's report that referred to a report that was prepared by another doctor was admissible because it was evidence that a reasonably prudent person would rely upon in conducting their affairs); see also *Helm v Univ of Mich*, 147 Mich App 135, 138; 383 NW2d 131 (1985) (concluding that a letter written by a therapist on a hospital letterhead was admissible because it was evidence that a reasonably prudent person would rely upon in conducting their affairs). The drug test results at issue in this case are sufficiently similar to the evidence

described in the caselaw cited above, and the fact that their admission did not strictly comply with the Michigan Rules of Evidence, alone, is insufficient to render them inadmissible under the APA.

Additionally, MCL 421.29(1)(m), which provides that "[a] report by a drug testing facility showing a positive result for the presence of a controlled substance is conclusive unless there is substantial evidence to the contrary," provides further support for our conclusion. Squier argues that MCL 421.29(1)(m) involves the weight, not admissibility, of evidence, but the statutory language quoted above was added in 2011, see 2011 PA 269, long after this Court's decisions in *Rentz* and *Helm*, which both unequivocally held that the medical evidence, even if inadmissible hearsay under the Michigan Rules of Evidence, is admissible so long as it is a type commonly relied upon by reasonably prudent men in the conduct of their affairs. "[I]t is a well-established rule of statutory construction that the Legislature is presumed to be aware of judicial interpretations of existing law when passing legislation." *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 439-440; 716 NW2d 247 (2006) (citations and internal quotation marks omitted). Consequently, the Legislature is presumed to have been aware that drug test results, like those at issue in this case, would be admissible in administrative proceedings, and, in enacting that provision, simply sought to clarify the weight of such evidence, i.e., that it would be "conclusive unless there is substantive evidence to the contrary." Thus, we conclude that the MCAC did not err in admitting the drug test results over Squier's hearsay objections.

## 2. TESTIMONY REGARDING THE DRUG TEST RESULTS

Squier additionally argues that the circuit court's and MCAC's decisions should be reversed because Nowland's testimony regarding the drug test results they relied on in reaching their decisions constituted inadmissible hearsay for similar reasons. Specifically, Squier takes issue with Nowland's testimony that his employment was terminated "due to . . . drug overdose." At the outset, we note that Squier did not preserve this specific argument for appellate review, and we will ordinarily not address issues that were not raised below. While he claims that his objection to the drug test results should be treated as an objection to this testimony as well, that claim is legally unsupported. *Id*. Furthermore, the drug test results and Nowland's testimony served different purposes. Nowland's testimony established why Squier's employment was terminated. The drug test results established factual support for that reason. Nevertheless, Squier's argument in this regard is meritless because it relies entirely on his argument that the drug test results were inadmissible, an argument that we have already rejected.

## B. REMAND UNDER THE MICHIGAN ADMINISTRATIVE CODE

Squier also argues that the circuit court's and MCAC's decisions should be reversed because the MCAC failed to comply with the Michigan Administrative Code (MAC) in admitting the drug test results. We agree.

Rule 792.11419 under the MAC provides, in pertinent part, as follows:

> (1) The Michigan compensation appellate commission may decide cases on the record made by the administrative law judge, without any of the following:

> (a) Oral argument before it.

(b) Additional evidence.

(c) Consideration of written argument.

(2) The record made by the administrative law judge includes the transcript or recording of the hearing, accurate copies of exhibits clearly marked and received at the administrative law judge hearing, and written argument submitted to the administrative law judge if the other parties present at the hearing have been served a copy of the argument and have been given an adequate opportunity to respond to it.

Similarly, Rule 792.11422 provides as follows:

(1) When the Michigan compensation appellate commission orders additional evidence, it may do any of the following:

(a) Conduct a hearing pursuant to the act for the purpose of taking an receiving such evidence as it deems necessary.

(b) Remand the matter to an administrative law judge for the purpose of taking and receiving such evidence and submitting the evidence so received to the Michigan compensation appellate commission for decision.

(c) Set aside the administrative law judge's decision and remand the matter to the administrative law judge for the purpose of receiving such additional evidence and issuing a new decision based on the entire record.

(2) Absent an evidentiary hearing, the Michigan compensation appellate commission shall mail a copy of any evidence it intends to introduce into the record to each party. The parties shall have 14 days thereafter to object to or refute such evidence.

"Principles of statutory interpretation apply to the construction of administrative rules." *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 65; 678 NW2d 444 (2003). Our analysis begins by looking to the "language of the administrative rule," and, "[i]f the language is unambiguous on its face, the drafter is presumed to have intended the meaning plainly expressed and further judicial interpretation is not permitted." *Id*. We must consider the language's placement within the statutory scheme in a manner that gives every word, clause, and phrase effect and avoids interpretations that render portions surplusage or nugatory. *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012).

The transcript of the hearing before the ALJ demonstrates that, while offered, the drug test results were not admitted into evidence. Instead, the ALJ expressly rejected them. Rule 792.11419(2) clearly provides that only exhibits that are "marked and received at the administrative law judge hearing" are part of "the record made by the administrative law judge." Relatedly, Rule 792.11419(2) distinguishes "the record made by the administrative law judge" from other things like "[o]ral argument before it" and "[a]dditional evidence." In order to give effect to ever word, clause, or phrase, it is our view that the phrase "additional evidence"

encompasses evidence that is not part of the record made by the ALJ. And, as stated above, the drug test results at issue in this case were not part of the record made by the ALJ in this case. As additional evidence, the MCAC was required to do one of four things in admitting the drug test results: (1) conduct a hearing for taking or receiving the evidence, (2) remand the matter to the ALJ for it to receive the evidence and then submit the matter back to the MCAC, (3) set aside the ALJ's decision and remand for the ALJ to receive the evidence and issue a new decision based on the entire record, or (4) mail a copy of the evidence to each party and allow them 14 days to object to or refute the evidence. Mich Admin Code, R 792.11422. The record does not reflect that any of these four things were done in this case. Thus, this matter must be remanded to the MCAC for further proceedings in compliance with this rule.

On remand, the MCAC must do one of the following: (1) conduct a hearing itself for the purpose of taking and receiving the drug test results, (2) remand the matter to the ALJ to take and receive the drug test results and then submit the matter back to the MCAC for a decision, (3) set aside the ALJ's decision and remand the matter to the ALJ to receive the drug screen report and issue a new decision based on the new record that includes the results, or (4) mail a copy of the drug test results to each party and allow them 14 days to object to or refute the evidence pursuant to Rule 792.11422. We note that, on remand, the MCAC is not obligated to allow Squier to introduce his medical marijuana card into evidence, but it may, in its discretion, do so. Under Rule 792.11419, the MCAC may decide cases based on the record made before the ALJ. While Rule 792.11422(2) requires the MCAC to allow parties to have 14 days to object to or refute additional evidence, Rule 792.11422(1) contains no such requirement. Furthermore, any evidence regarding Squier's medical use of marijuana would not refute the drug test results; rather, it would serve as an affirmative defense, and Rule 792.11422 does not require the MCAC to accept such evidence. In the event that the MCAC decides to admit Squier's medical marijuana card, we would note that it is also "[a]dditional evidence" and requires the MCAC to follow the same procedure as is required for admission of the drug test results.

Additionally, we reject Squier's argument that our decision in *Braska v Challenge Mfg Co*, 307 Mich App 340; 861 NW2d 289 (2014), automatically requires reversal in this case. While that case arguably stands for the proposition that use of medical marijuana in compliance with the MMMA should not be used as grounds to deny unemployment benefits under the MESA, Squier's argument ignores the fact that he made the affirmative decision *not* to testify or seek to admit evidence of his medical marijuana card before the ALJ. On remand, the decision whether to allow Squier to introduce evidence regarding his medical use of marijuana is left to the discretion of the MCAC.


C. CONSTITUTIONAL RIGHT TO DUE PROCESS

Alternatively, Squier argues that the circuit court's and MCAC's decisions should be reversed because he was deprived of his constitutional right to due process because the MCAC did not allow him to present additional evidence on appeal from the ALJ's decision. Therefore, Squier argues, the circuit court's and MCAC's decisions should be reversed and this matter

should be remanded to the MCAC to provide him with an opportunity to present additional evidence. We disagree.

Procedural due process constrains government action that deprives individuals of property by requiring that they be provided an opportunity to be heard at a meaningful time and in a meaningful manner. *Matthews v Eldridge*, 424 US 319, 332-333; 96 S Ct 893; 47 L Ed 2d 62 (1965). In this case, it is undisputed that Squier was provided an opportunity to present evidence rebutting the drug test results (as well as any other evidence) during a hearing before the ALJ. He chose not to. His argument on appeal is that, despite choosing not to before the ALJ, he nevertheless should have been provided, in essence, a second bite at the apple. However, in deciding not to present any evidence before the ALJ, Squier decided to risk not only that the ALJ might uphold the denial of unemployment benefits, but also that, even if the ALJ reversed the denial of unemployment benefits, the MCAC might reverse that decision. Thus, Squier was not deprived of his constitutional right to due process.

## III. CONCLUSION

Accordingly, we conclude that the circuit court, as well as the MCAC, did not err in concluding that the drug test results were admissible during the administrative proceedings over Squier's hearsay objections. However, because the MCAC admitted those results without complying with Rule 792.11422, a remand to the MCAC is required as described above. On remand, the decision whether to allow Squier to introduce evidence regarding his medical use of marijuana remains within the MCAC's discretion. Furthermore, we reject Squier's due-process claim because he chose not to present the evidence before the ALJ that he now seeks to present.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien