*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JERIKA JONES,

        Plaintiff-Appellant/Cross-Appellee,

v

DAVID T. HAMMONS and GRANE
TRANSPORTATION LINES, LTD,

        Defendants-Appellees/Cross-
        Appellants,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
February 18, 2026
12:16 PM

No. 374665
Kalamazoo Circuit Court
LC No. 2023-000386-NI

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

A plaintiff seeking to recover noneconomic damages under Michigan's no-fault act must prove that a motor vehicle accident caused an impairment that is "objectively manifested." Under controlling caselaw, an impairment is not the injury itself, but the injury's effect on a body function. Plaintiffs nevertheless often attempt to satisfy the "objectively manifested" requirement by pointing to imaging studies that establish the existence of an *injury* rather than the existence of an *impairment*. Because a plaintiff must prove that the *impairment* is objectively manifested and plaintiff Jerika Jones has not made that showing, we affirm the circuit court's grant of summary disposition to defendants.

## I. FACTS

Plaintiff's daughter was a dancer affiliated with a dance troupe organized by Margaret Roberson. In August 2022, Roberson arranged for the troupe to perform in Chicago and drove plaintiff's daughter and other dancers to the event. On the evening of August 14, Roberson and three dancers left Chicago to return to Michigan. While traveling on I-94 near Kalamazoo, the vehicle ran out of gasoline. Roberson exited the vehicle and walked to the nearest freeway exit in search of fuel.

When plaintiff's daughter did not arrive home at the expected hour, plaintiff contacted her by phone and learned of the situation. Plaintiff, who was at her father's house in Southfield, immediately set out to locate her daughter and the others. While plaintiff was en route, Roberson returned with gasoline, but the vehicle still would not start. Plaintiff ultimately located the disabled vehicle late that night, between 11:30 p.m. and midnight.

After unsuccessful attempts to start the vehicle, the group devised another plan: Plaintiff would push the Roberson vehicle with her own vehicle to the nearest exit. Accounts differ as to how this maneuver was carried out. What is undisputed, however, is that in the early morning hours of August 15, defendant David Hammons—who was operating a semi-truck for co-defendant Grane Transportation—rear-ended plaintiff's vehicle.

Plaintiff and several others were transported to a local hospital, where plaintiff received treatment and was discharged the same day. The following day, plaintiff went to the emergency room at Henry Ford Hospital, where she complained of "generalized full body pain." She was again discharged, this time with pain medication.

In the days that followed, plaintiff continued to complain of pain and sought treatment from Northland Radiology, where multiple imaging studies were performed. The doctors there, including Dr. Benjamin Krpichak, diagnosed plaintiff with a variety of injuries, including "C-L RADICULOPATHY." They recommended that plaintiff be on a "No work" restriction, receive household replacement services, and limit driving to no more than 15 miles per day, though they did not identify a need for attendant care. A later independent medical examination conducted by Dr. David Rustom concluded that the imaging was not medically necessary and raised concerns that plaintiff was malingering.

Plaintiff initiated this litigation in Kalamazoo Circuit Court in July 2023. Her complaint alleged counts of negligence, owner liability, negligent entrustment, respondeat superior, negligent supervision and training, vicarious liability, and "excess economic/non-economic damages" against defendants—this last count apparently being separate requests for damages under

MCL 500.3135(3)(c) and (b), respectively.[1]  Plaintiff also alleged a count for "no-fault PIP benefits" against her no-fault insurer, State Farm Mutual Automobile Insurance Company.[2]

Defendants filed two motions for summary disposition.  In the first, they argued that plaintiff could not prove a threshold injury under MCL 500.3135(1), as required to recover noneconomic damages under MCL 500.3135(3)(b).  In the second, they contended that plaintiff could not show that Hammons was negligent and that all claims against him and his employer should therefore be dismissed.  State Farm separately moved for partial summary disposition, arguing that plaintiff could not demonstrate any lost wages as part of her claim for PIP benefits.

Following a hearing, the trial court ruled on the motions seriatim.  It first ruled that plaintiff could not prove a threshold injury, both because she could not prove that her issues were caused by the accident and because her general ability to lead her normal life had not been impaired.  The court next ruled that there was a genuine issue of material fact as to whether Hammons negligently caused the accident, given that Hammons and most other witnesses placed the vehicles in the travel lane, while plaintiff testified that they were on the shoulder.  Finally, the court granted State Farm's motion for partial summary disposition.

The court then signed an order submitted by defendants that dismissed plaintiff's claims against them "in their entirety."  Plaintiff later stipulated to dismissing the remainder of her claim against State Farm, and this appeal followed.  Plaintiff challenges the trial court's ruling that she cannot prove a threshold injury, while defendants argue on cross-appeal that the trial court erred by finding a genuine issue of material fact as to whether Hammons was negligent.[3]

## II.  STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition and questions of statutory interpretation.  *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999); *Ford*

---

[1] Because MCL 500.3135(3) generally abolishes "tort liability arising from the ownership . . . or use within this state of a motor vehicle," plaintiff's "negligence" claim was subsumed within her claims for excess economic and noneconomic damages, which are statutory exceptions to that general abolition of tort liability.

[2] The issues raised on appeal do not involve State Farm, so all references to "defendants" in this opinion refer only to Hammons and Grane Transportation.

[3] Although MCL 500.3135(1) requires proof of a threshold injury to recover noneconomic damages under MCL 500.3135(3)(b), no such showing is required for claims seeking excess economic damages under MCL 500.3135(3)(c).  See *Ouellette v Kenealy*, 424 Mich 83, 85-86; 378 NW2d 470 (1985).  Defendants argued below that if the trial court granted State Farm's motion for partial summary disposition, plaintiff's claim for excess economic damages against them should likewise be dismissed.  The trial court implicitly agreed with this argument: notwithstanding its denial of summary disposition on negligence grounds, it still dismissed plaintiff's claims against defendants "in their entirety," including plaintiff's claim for excess economic damages.  Because plaintiff does not contest the trial court's treatment of her excess economic damages claim on appeal, the issue is not before us.

-3-

*Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006).  A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of a claim.  In reviewing such a motion, a court "considers affidavits, pleadings, depositions, admissions, and documentary evidence . . . in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).  When such a motion is adequately supported by the moving party, the nonmoving party "must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial."  MCR 2.116(G)(4).  Summary disposition is appropriate if the evidence "show[s] that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto*, 451 Mich at 362.

## III.  ANALYSIS

Under Michigan's no-fault act, a motorist is "subject to tort liability for noneconomic loss caused by his or her ownership . . . or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1).  These three conditions are commonly referred to as "threshold injuries." Plaintiff seeks to recover noneconomic damages based on an alleged "serious impairment of body function."

The statute defines a "serious impairment of body function" as an impairment that satisfies three requirements, the first of which is that the impairment be "objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person."  MCL 500.3135(5)(a).  Defendants challenged plaintiff's ability to satisfy this requirement, among others.  We conclude that plaintiff has failed to produce evidence that her alleged impairment was "objectively manifested."

The definitive case interpreting this statutory language is *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010).[4]  There, the Court explained that "an 'objectively manifested' impairment is . . . one observable or perceivable from actual symptoms or conditions." *Id*. at 196. Critically, the court emphasized that an *impairment* is distinct from an *injury*:

> Notably, [the statute] does not contain the word "injury," and, under the plain language of the statute, the proper inquiry is whether the *impairment* is objectively manifested, not the *injury* or its symptoms.  This distinction is important because "injury" and "impairment" have different meanings.  An "injury" is "1. Damage of or to a person . . .   2. A wound or other specific damage." "Impairment" is the "state of being impaired," and to be "impaired" means being "weakened, diminished, or damaged" or "functioning poorly or inadequately." These definitions show that while an injury is the actual damage or wound, an impairment generally relates to the effect of that damage.  Accordingly, when

---

[4] Although the Legislature amended the statute after *McCormick* was decided, it expressly stated that it "intended to codify and give full effect to the opinion of the Michigan supreme court in *McCormick v Carrier*."  2019 PA 22, enacting § 1.

considering an "impairment," the focus "is not on the injuries themselves, but how the injuries affected a particular body function." [*Id.* at 197 (cleaned up).]

The statute therefore requires objective manifestation of the impairment; since an impairment is an effect caused by an injury, a plaintiff must produce evidentiary support of the effect, not the injury as such.[5] The Court further explained that "the 'objectively manifested' requirement signifies that plaintiffs 'must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering' and that showing an impairment generally requires medical testimony." *Id.* at 198, quoting *DiFranco v Pickard*, 427 Mich 32, 74; 398 NW2d 896 (1986).

If the focus is on how an injury affected a particular body function, the threshold question is which body function is allegedly impaired. In her deposition testimony, plaintiff stated that she has difficulty performing certain household tasks. She offered several examples of things she was unable to do, including lifting a pot of water to boil spaghetti noodles, raising her hands above her shoulders to wash and style her hair, and moving furniture to clean or redecorate her home. She also described mobility limitations, such as difficulty checking her blind spot while driving and performing a toe touch.

That said, *McCormick* makes clear that a plaintiff's subjective assertion of pain and suffering is insufficient. Instead, a plaintiff must produce evidence that his or her impairment is "objectively manifested." Moreover, what must be "objectively manifested" is an impairment, not an injury. Although *McCormick* cited *DiFranco* with approval, and *DiFranco* said that there must be "evidence establishing that there is a physical basis for their subjective complaints of pain and suffering," *McCormick* clarified that this "physical basis" inquiry is not controlling. *DiFranco* had required that a plaintiff "prove that his noneconomic losses arose out of a medically identifiable *injury* which seriously impaired a body function." *DiFranco*, 427 Mich at 75 (emphasis added). *McCormick* clarified that while "the Legislature plainly rejected that it is the *injury* that should be objectively manifested, as opposed to the *impairment*, the previous judicial construction of 'objectively manifested' is still relevant." *McCormick*, 487 Mich at 198 n 12. In other words, although the Court looked to *DiFranco* for guidance on the meaning of "objectively manifested," after *McCormick* courts may not focus on whether an injury is objectively manifested; rather, the impairment must be.

This Court's decision in *Patrick v Turkelson*, 322 Mich App 595; 913 NW2d 369 (2018), illustrates the proper application of this standard. There, the plaintiff was in a car accident in which the airbags deployed, which she alleged left her with ringing in her ears. The trial court concluded

---

[5] This is not to say the showings are unrelated. For example, in *McCormick*, 487 Mich at 218, the plaintiff "presented evidence that he suffered a broken ankle," which supported his claim of an objectively manifested impairment. But he further substantiated his claim with "an FCE report [that] observed that ankle pain and a reduced range of motion" dated "14 months after the incident," which was evidence of "actual symptoms or conditions that someone else would perceive as impairing body functions." *Id.* There may even be the rare instance—such as a severed hand—in which evidence of the injury is sufficient to establish an impairment because the injury, on its face, clearly establishes an impairment of an important bodily function.

that, because hearing loss is inherently subjective, it could not be objectively manifested as required by MCL 500.3135(5)(a). This Court reversed. We reviewed extensive testimony from the plaintiff's medical professionals—consistent with *McCormick*'s observation that "showing an impairment generally requires medical testimony"—and explained how that testing produced objectively manifested results. *Id*. at 599-602. We also noted that plaintiff substantiated her impairment with testimony from her husband, who testified that she "had difficulties after the accident with speaking too softly or too loudly, which made it hard for him to understand her." *Id*. at 609. This evidence demonstrated that the plaintiff "was not making unverifiable, subjective complaints of mere pain and suffering"; rather, she had "produced evidence from medical professionals and others that create[d] questions of fact as to the nature and extent of the impairment she allege[d] arose from the car accident." *Id*. at 611.

*Patrick* illustrates the type of evidence necessary to create a question of fact regarding whether an impairment is "objectively manifested" under MCL 500.3135(5)(a). The analysis focused on whether the impairment was observable, not on whether the plaintiff could identify an objectively manifested injury to the ear or related anatomy. The plaintiff produced both medical and lay evidence showing that her hearing function was impaired in ways observable to others.

Here, plaintiff has not produced comparable evidence. Although her brief cites various physical conditions affecting her spine—such as a disc bulge and spinal stenosis—these are, at best,[6] efforts at documenting the existence of an *injury* rather than the objective manifestation of an *impairment*. Plaintiff offered no deposition testimony from family members or others describing observable limitations in her functioning, nor did she present medical testimony explaining how her alleged impairments were observable or perceivable from actual symptoms or conditions.

Although plaintiff submitted paperwork placing her on various restrictions, those documents consist largely of a list of diagnoses—"C-T-L PAIN, B/L HAND, B/L WRIST, B/L SHOULDER, B/L ELBOW, B/L HIP, B/L KNEE PAIN, ABDOMIN PAIN, ANKLE AND FOOT PAIN, B/L TIP/FIB PAIN, C-L RADICULOPATHY"—without explanation of any objective findings supporting those conditions. Indeed, the Northland Radiology records state that "[t]here is currently no electrodiagnostic evidence of a cervical radiculopathy" yet also list "C-L RADICULOPATHY" as a diagnosis. Absent testimony or documentation explaining how plaintiff's functional limitations were observed by others, this evidence is insufficient to establish an objectively manifested impairment.

---

[6] Defendants also dispute whether any of these injuries were caused by the accident. Although plaintiff asserts in her brief that Dr. Krpichak's assessment is that the injuries were "all secondary to the motor vehicle accident of August 15, 2022," we do not see any such assertion in the Northland Radiology paperwork.

Because plaintiff has not produced evidence that her alleged impairment is objectively manifested, she cannot satisfy MCL 500.3135(5)(a). We therefore affirm the trial court's grant of summary disposition.[7] Defendants may tax costs as the prevailing party.[8]

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman

---

[7] Because plaintiff must establish all three statutory requirements of a serious impairment of body function under MCL 500.3135(5), and she has failed to satisfy the objectively manifested requirement, we need not address her remaining appellate arguments.

[8] We need not reach the arguments raised in defendants' cross-appeal. As noted *supra*, n 3, plaintiff does not challenge the trial court's grant of summary disposition as to her claim against defendants under MCL 500.3135(3)(c), so her inability to prove a serious impairment of body function is dispositive of all remaining issues in the case.