# STATE OF MICHIGAN

# COURT OF APPEALS

ONEWEST BANK, FSB,

Plaintiff-Appellant,

UNPUBLISHED
March 19, 2015

v

No. 320037
Newaygo Circuit Court
LC No. 13-019908-CH

DAVID C. JAUNESE, Personal Representative of
the ESTATE OF ANNA I. MADISON, and
BETINA A. MALHOTRA,

Defendants-Appellees.

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Plaintiff OneWest Bank, FSB (OneWest), appeals as of right the trial court's order granting summary disposition in favor of defendants. This lawsuit involves an alleged scrivener's error in a mortgage's legal description of real property and an attempt by mortgage-assignee OneWest to reform the mortgage based on mutual mistake long after foreclosure proceedings relative to the mortgage had been concluded, including expiration of the redemption period. We affirm.

On February 22, 2008, Gloria Baldwin, signing as power of attorney, executed a fixed-rate home equity conversion mortgage (hereafter reverse mortgage or mortgage) on behalf of Donald and Anna Madison, husband and wife, in favor of mortgagee Financial Freedom Senior Funding Corporation (FFSFC), securing up to a maximum amount of $300,240 relative to a promissory note executed that same day. Donald Madison alone was the obligor on the underlying note, which was also signed on his behalf by Baldwin as power of attorney. According to a United States Department of Housing and Urban Development (HUD) settlement statement, approximately $158,665 was disbursed at the closing. The legal description of the collateral property was set forth in exhibit A that was attached to and incorporated by reference in the reverse mortgage, and the property was described as follows:

The land referred to in this instrument, situated in the Township of Barton, County of Newaygo, State of Michigan, is described as:

South 1/2 of the Northwest 1/4 of the West 1/2 of the Northeast 1/4 of the Southwest 1/4, of Section 3, Township 16 North, Range 11 West.

The mortgage indicated that the address of the legally-described property was 14091 Chestnut Avenue in Reed City. This address correctly identified the location of the Madisons' home. OneWest contends that the legal description was intended to have read, absent a scrivener's error, "South 1/2 of the Northwest 1/4, *also* West 1/2 of the Northeast 1/4 of the Southwest 1/4, of Section 3, Township 16 North, Range 11 West." (Emphasis added.) Focusing more closely, according to OneWest, "Northwest 1/4 *of the* West 1/2" should have instead stated "Northwest 1/4, *also* West 1/2" – the words "of the" were mistakenly used rather than the word "also." The real estate actually described in the mortgage was 2 ½ acres of vacant land owned by the Madisons, instead of a 106-acre parcel owned by the Madisons and improved with a house, barn, and an outbuilding, which OneWest argues was clearly the intended security for the loan.[1] The tax parcel number that was listed directly after the legal description in the exhibit to the mortgage pertained to the full 106-acre parcel.

Because the mortgage was guaranteed by HUD, a second mortgage in favor of HUD as mortgagee was additionally executed, which mortgage also contained the same alleged scrivener's error. HUD is not involved in this litigation, nor has HUD sought to reform its mortgage. As asserted in an affidavit executed by the president of the company that acted as broker on the Madison loan, HUD requires reverse mortgage loans to be secured by property improved with a residential structure; a reverse mortgage on vacant land is not permitted by HUD. The broker's president further averred that the Madisons' property had been appraised for purposes of the loan and mortgage and that it was the broker's intent "that all 100 plus acres, improved with the home and other structures be appraised as that was the property that was intended by Madison to be mortgaged as support for his . . . loan." Attached to the affidavit was a November 2007 appraisal, valuing the Madisons' property at $280,000 and containing pictures of the home, barn, and outbuilding, with an in-depth analysis of the home's features. The broker's president also averred that it was the broker's intent that the 100 plus acres of land and buildings thereon be used as collateral for the loan, not any vacant acreage. He concluded that "[i]n reviewing the legal description . . ., there is clearly a scrivener[']s error that results in a small portion of vacant land being legally described . . ., instead of the 100 acre plus parcel as contemplated by the parties to the original loan transaction."

An affidavit submitted by Gloria Baldwin, the person who executed the mortgage under a power of attorney, essentially mimicked the averments made by the broker's president; Baldwin was of the understanding that the mortgage securing the loan encompassed over 100 acres of land and the Madisons' home. She averred:

> I have been advised that there was an error in the legal description in the Reverse Mortgage that resulted in a small portion of vacant land being legally described in the Mortgage, instead of the 100 acre plus parcel as contemplated by the parties to the original loan transaction. This is a mistake as it was always intended by me, in my capacity as Durable Power of Attorney for Donald

---

[1] The 2 ½ acres of vacant land were a small fraction of the 106 acres that comprised the Madisons' farmstead.

Madison and Anna Madison, that the entire 100 acre plus parcel, including all physical improvements, with the commonly known address of 14091 Chestnut Ave., Reed City, Michigan be the collateral for the Reverse Mortgage and be the legal description described in the Reverse Mortgage.

On August 2, 2008, Donald Madison died, leaving behind his wife Anna, and defendant David Jaunese was appointed personal representative of Mr. Madison's estate. In December 2008, defendant Betina Malhotra, acting as guardian and conservator for Anna Madison who was incapacitated and residing in a nursing home at that time, filed suit against Baldwin in the circuit court, alleging that Baldwin was not related to the Madisons and was not well known to the Madison family. Malhotra further alleged that Baldwin procured the powers of attorney through fraud, undue influence, and duress. Malhotra additionally alleged that Baldwin unlawfully depleted accounts held by the Madisons, that Baldwin unlawfully executed a quitclaim deed on behalf of Anna in January 2008, deeding her interest in the Madisons' home to Donald, that Baldwin then unlawfully executed the reverse mortgage at issue here, and that Baldwin unlawfully received the funds from the reverse-mortgage closing with FFSFC, converting them to her own use. The complaint alleged breach of fiduciary duty and conversion, along with requesting an accounting. While that suit remained pending, Anna Madison passed away in March 2009. As reflected in an affidavit submitted in the instant litigation, Malhotra was the Madisons' granddaughter and sole heir.

In October 2009, FFSFC assigned the mortgage, absent any changes to the legal description contained in the mortgage, to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Financial Freedom Acquisition, LLC (FFA). The assignment referenced the previously recorded mortgage, noting that the property was known as 14091 Chestnut Ave. The assignment was made without recourse, representation, or warranty with respect to the property.

On November 6, 2009, a stipulated order was entered in the probate court as to the estates of Donald and Anna Madison, which authorized personal representative (PR) Jaunese to utilize funds from a Chemical Bank account to pay off the reverse mortgage, and which released Chemical Bank and Jaunese from any claims by Baldwin regarding the disbursement of funds from Chemical Bank to Jaunese and Jaunese's use of those funds to satisfy debts of the estates. Ultimately, the estates and PR Jaunese were unable to pay off the loan/mortgage. The probate court order also provided that any new issues or disputes that had arisen between Baldwin and Malhotra or any claims that they might have against the decedents' estates were to be joined with the pending circuit court action brought by Malhotra against Baldwin. In Baldwin's affidavit, she averred that the proceeds from the reverse mortgage "were turned over to . . . Malhotra pursuant to the Newaygo County Probate Court Order dated November 6, 2009." Malhotra's circuit court action against Baldwin was later dismissed with prejudice in February 2010 pursuant to a stipulation. We note that Baldwin asserted in her affidavit that Malhotra was aware as of December 2008 that the Madisons' home and farm were encumbered by the reverse mortgage.

On January 13, 2010, PR Jaunese, on behalf of the estate of Donald Madison, quitclaimed all of the estate's interest in the Madisons' property, correctly described, to the estate of Anna Madison, for which Jaunese was also serving as personal representative. The quitclaim deed was

recorded on January 14, 2010, with the Newaygo County Register of Deeds. In February 2010, FFA initiated foreclosure by advertisement proceedings, MCL 600.3201 *et seq.* MCL 600.3201 provides, in part, that "[e]very mortgage of real estate, which contains a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the manner specified in this chapter." The reverse mortgage had included a power-of-sale clause and provided that the lender could "require immediate payment in full of all sums secured by this Security Instrument if . . . A Borrower dies and the Property is not the principal residence of at least one surviving Borrower[.]" As reflected in an affidavit of publication, see MCL 600.3208, notice of the foreclosure proceedings was published for four successive weeks in February 2010 in a county newspaper. The legal description of the property contained in the published notices was that of the 2 ½-acre parcel of vacant land.[2] An affidavit of posting, see MCL 600.3208, contained the same legal description as in the published notices, and it reflected that a foreclosure notice had been posted on the premises located at 14091 Chestnut Avenue in Reed City. An affidavit of compliance with the foreclosure-by-advertisement statutes was executed by FFA's attorney, which affidavit contained the same legal description as that in the mortgage, absent the error mentioned above that was contained in the published and posted notices (see footnote 2). On March 5, 2010, an FFA attorney executed an affidavit of abandonment, which averred that an inspection of the premises had occurred on March 5, 2010, revealing that no "mortgagor or any persons claiming under the mortgagor were presently occupying or intending to occupy the premises." This affidavit was recorded on April 18, 2010.

On July 30, 2010, prior to the scheduled sheriff's sale, MERS, as nominee for FFA, assigned MERS's interest in the mortgage to FFA. This assignment contained the legal description of the mortgage interest being assigned, and the description had not changed from that contained in the original FFSFC mortgage; it described 2 ½ acres of vacant land. The assignment of mortgage did list the correct address and tax parcel number for the Madisons' property. On August 5, 2010, the MERS-to-FFA assignment of the mortgage was recorded. On August 17, 2010, a sheriff's sale was conducted on the foreclosure, and, according to the sheriff's deed, FFA purchased the land described in the deed, i.e., the same 2 ½-acre vacant parcel described in the mortgage, for $275,223. The sheriff's deed did provide that the described property was "[m]ore commonly known as 14091 Chestnut Avenue." And it did reference the tax parcel number that was applicable to the full 106 acres of land. The sheriff's deed was recorded on August 26, 2010. An "affidavit declaring redemption designee" signed by FFA's counsel identified Orlans Associates, P.C. (Orlans), for purposes of any redemption efforts and a redemption computation. This affidavit also referred to the 2 ½-acre vacant parcel. The affidavit set the redemption expiration date as February 17, 2011, or within 30 days of the sale if the property was considered abandoned, MCL 600.3241a, which was the case in light of the earlier affidavit of abandonment.

---

[2] We note that the legal description in the published notices also contained an inaccurate reference to the "Northwest 1/4" directly after the language at issue here, where the mortgage referred to the "Northeast 1/4."

On February 15, 2011, PR Jaunese, on behalf of the estate of Anna Madison, executed a quitclaim deed conveying the Madisons' property, correctly described, to sole heir Malhotra. The quitclaim deed was recorded on February 16, 2011. On May 10, 2011, FFA's attorney executed an affidavit of scrivener's error.[3] The affidavit recited the history of the mortgage, the alleged correct legal description of the mortgaged property, the assignments, the foreclosure proceedings, and the sheriff's sale, all as reflected in the public records. The affidavit concluded that "it is apparent that the Incorrect Legal Description in the Sheriff's Deed was a result of a scrivener's typographical error[.]" The affidavit of scrivener's error was recorded on May 16, 2011. The affidavit was recorded long after the redemption period had expired, even if we contemplated a six-month redemption period instead of the 30-day period that appeared to be applicable.

On November 30, 2011, an attorney for FFA and Orlans, the redemption designee, executed an affidavit to expunge sheriff's deed on mortgage sale. She averred that FFA was the holder of the Madison mortgage. Counsel then set forth the legal description of the property encumbered by the mortgage, which description encompassed the entire 106-acre parcel. The affidavit proceeded to acknowledge the sheriff's sale, but the affidavit provided that FFA would "not rely on said foreclosure sale." The final averment stated that FFA "wishe[d] this affidavit to be recorded in order to correct record title and to show that the Sheriff's Deed on Mortgage Sale . . . is of no force or effect." The affidavit to expunge sheriff's deed on mortgage sale was recorded on December 2, 2011. This was more than a year after the 30-day redemption period had expired.

On January 27, 2012, FFA assigned the ostensibly defunct mortgage to OneWest, referencing the mortgage and an affidavit to correct legal description,[4] followed by a legal description that was consistent with the 106-acre parcel. The assignment also listed the correct address and tax parcel number for the Madisons' property. Again, at this point, the foreclosure proceedings had been completed and the redemption period had elapsed, and no party had instituted legal proceedings to vacate or set aside the foreclosure.

On July 2, 2013, more than one year since the OneWest assignment and nearly three years after the sheriff's sale had been conducted, OneWest filed a complaint for reformation of the mortgage and to quiet title to the property, MCL 600.2932. Anna Madison's estate and Malhotra were the named defendants. The complaint recited the chain of title and the history of the mortgage as discussed above; however, it failed to make any mention of the foreclosure proceedings. OneWest alleged that the mortgage contained an incomplete legal description, which did not adequately describe the property that was intended by all parties to secure the loan.

---

[3] OneWest states in its appellate brief that the affidavit was executed after PR Jaunese and Malhotra had been informed of the error in the sheriff's deed; however, OneWest does not provide a supporting document or transcript citation with respect to that claim.

[4] The lower court record does not contain a document titled "affidavit to correct legal description." The reference in the assignment of mortgage may have been alluding to the affidavit of scrivener's error or the affidavit to expunge the sheriff's deed.

OneWest asserted that FFSFC and the Madisons had intended for the mortgage to cover the Madisons' entire real property interest and that a scrivener's error caused the faulty legal description. OneWest requested the trial court to reform the mortgage accordingly and to confirm OneWest's superior interest in the property over the estates and Malhotra.

PR Jaunese filed an answer on behalf of Anna Madison's estate, which admitted that the legal description in the mortgage was wrong, admitted that the Madisons and FFSFC intended for the loan to be secured by the Madisons' entire 106-acre parcel, including the structures thereon, and admitted that a scrivener's error had been made. We note that, by this time, neither estate had a legal interest in the property given the conveyance to Malhotra in connection with distribution of Anna Madison's estate. Malhotra immediately filed a motion for summary disposition, seeking to have OneWest's complaint dismissed under MCR 2.116(C)(7) and (8). Malhotra argued that the complaint failed to adequately set forth the elements of reformation and failed to show the existence of a true mistake, let alone a mutual mistake, with respect to the description of the collateral. She further contended that the mortgage and sheriff's deed had been unilaterally and perhaps fraudulently altered by the affidavits recorded by FFA after the foreclosure proceedings were concluded, effectively leaving successor OneWest with unclean hands, thereby precluding any entitlement to equitable relief. Malhotra further maintained that the mortgage had been extinguished and fully satisfied pursuant to the foreclosure proceedings, which were completed long ago and no longer legally subject to revision. She made an attendant laches argument. Lastly, Malhotra argued that OneWest, having obtained its assigned interest after the mortgage had been extinguished and the foreclosure proceedings finalized, including expiration of the redemption period, lacked standing to have the mortgage reformed.

OneWest responded to Malhotra's motion for summary disposition and filed its own motion for summary disposition under MCR 2.116(C)(10), arguing, on the basis of the evidence discussed above, that there was no genuine issue of material fact and that, as a matter of law, OneWest was entitled to reformation of the mortgage because of the scrivener's error and was also entitled to have title to the entire 106-acre parcel quieted in its favor. Malhotra filed a response brief that essentially reiterated the earlier arguments made in her brief in support of her motion for summary disposition. At the hearing on the competing motions for summary disposition, the trial court noted that the only thing that OneWest had going for it was "some type of an equitable argument," where FFA "paid an awful lot of money for five acres." The trial court granted Malhotra's motion for summary disposition and denied OneWest's motion for *the reasons stated in Malhotra's summary disposition briefs*. The trial court also stated that OneWest's suit was simply too late and that "if we start fooling with foreclosed properties once a sheriff's deed has been issued in this state we'll be lost, particularly when we're looking at the most recent problems with foreclosure where there's millions of them[.]"

After the trial court's ruling from the bench, the parties could not agree to the substance of an order enshrining the court's ruling. At the hearing to settle the order, there was some dispute regarding whether summary disposition should encompass Anna Madison's estate in light of the admissions by PR Jaunese in the answer and the estate's failure to even seek summary disposition. The trial court, noting that the estate's interest was irrelevant at this point, entered an order granting summary disposition in favor of both Anna Madison's estate and Malhotra *on the basis of the authorities and reasons set forth in Malhotra's briefs, her*

-6-

*supporting affidavit, and the overall record in the case*. The order also denied OneWest's motion for summary disposition.

OneWest proceeded to file a motion for leave to file an amended complaint. The proposed amended complaint added more in terms of the history of the case, including allegations and information regarding the foreclosure proceedings, added a count seeking reformation of the sheriff's deed, added an equitable mortgage count, added an unjust enrichment count, added a constructive trust/lien count, added a count seeking to set aside the foreclosure sale and sheriff's deed, and added a count requesting foreclosure of a corrected mortgage or foreclosure of an equitable mortgage. The proposed amended complaint also added FFA as a party plaintiff, given that the order granting summary disposition accepted Malhotra's argument that OneWest lacked standing. OneWest additionally filed an accompanying motion for reconsideration of the trial court's summary disposition ruling.

The trial court held a hearing on both motions. The court indicated that it had reexamined the case and was augmenting its prior ruling with a four-page statement that it read from the bench. The trial court recited and traced the history of the case, beginning with the execution of the reverse mortgage. We have examined that same history above, but the trial court did additionally mention that "Malhotra apparently tried to pay off the mortgage debt, was unsuccessful[,] and spent the money on other estate debts." The trial court then indicated that, based on the record, this case concerned a unilateral mistake by the lender, absent any fraud by the Madisons, and not a mutual mistake, thereby precluding the desired equitable relief. The trial court also found that the doctrine of laches barred the lawsuit and that the equities generally favored Malhotra. For these reasons, the trial court denied the motion for leave to amend the complaint and the motion for reconsideration.

On appeal, OneWest first argues that the trial court erred in ruling that OneWest was not entitled to equitable relief in the form of reformation of the mortgage. In support of its position, OneWest maintains that the affidavit to expunge the sheriff's deed on mortgage sale effectively restored the mortgage such that its legal description could be reformed and corrected. In further support, OneWest asserts that the affidavit to expunge had the effect of setting aside the foreclosure sale and that foreclosure sales can generally be set aside once completed. OneWest next contends that, in the context of the claim for reformation, the trial court erred by applying the law governing unilateral mistake of fact, which requires a showing of fraud by the party who was not mistaken, when OneWest's reformation claim was actually predicated on *mutual* mistake of fact. OneWest argues that there existed clear and convincing evidence establishing a mutual mistake of fact as a matter of law. Next, OneWest maintains that the trial court erred in applying the doctrine of laches in rejecting its cause of action to reform the mortgage. In support, OneWest contends that the trial court cited no evidence that the delay in filing suit was unexcused or unexplained or that revealed that Malhotra had been prejudiced by the delay, all as necessary to apply the laches doctrine. Finally, OneWest argues, in the alternative, that the trial court abused its discretion in denying its motion for leave to amend the complaint. In support of its position, OneWest asserts that the proposed amendment addressed the supposed deficiencies in the original complaint as identified by the trial court and that the amendment would not have been futile.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). We also review de novo a trial court's ruling on equitable matters or doctrines, such as reformation, unclean hands, and laches. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005); *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013); *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013). Likewise, this Court reviews de novo questions of law, including the proper construction of a contract such as a mortgage, as well as the proper interpretation of a statute. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008); *Graves v American Acceptance Mtg Corp (On Rehearing)*, 469 Mich 608, 613; 677 NW2d 829 (2004); *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). We review for an abuse of discretion a trial court's ruling on a motion for leave to amend a pleading. *Franchino v Franchino*, 263 Mich App 172, 189; 687 NW2d 620 (2004).

In granting summary disposition in favor of defendants, the trial court relied on the reasons set forth in Malhotra's summary disposition briefs, and the court's subsequent ruling on the motions to amend the complaint and for reconsideration was intended, as stated by the court, to simply augment its earlier ruling. Malhotra had argued at summary disposition that OneWest's complaint should be dismissed because OneWest lacked standing and because OneWest had unclean hands. Accordingly, because the trial court adopted these arguments by reference in making its ruling, standing and unclean hands were two alternative and independent grounds that supported summarily dismissing OneWest's complaint. As gleaned from the summarization above of OneWest's appellate arguments, they do not include arguments regarding standing and unclean hands, each of which could serve as a basis to dismiss a complaint. Therefore, this briefing failure alone supports affirmance of the trial court's ruling, where OneWest fails to address all of the grounds relied on by the trial court in summarily dismissing the case. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2007) (When an appellant fails to dispute or challenge a reason given by a trial court that in and of itself can support the trial court's disposition of a case, this Court need not even contemplate granting the relief sought by the appellant); see also *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 175; 568 NW2d 365 (1997). Moreover, as explained below, we conclude that, substantively speaking, OneWest indeed lacked standing and had unclean hands.

Given Baldwin's affidavit, the affidavit of the broker's president, the admissions by Anna Madison's estate in the answer to OneWest's complaint, the references in the mortgage to the Madisons' home address and the tax parcel number, which encompassed the entire farmstead, the HUD requirements, the appraisal, the amount borrowed, the amount of the line of credit available to the mortgagors, and the legal description of only 2 ½ acres of vacant land when the Madisons owned 160 acres improved with structures, we believe that the inescapable conclusion is that the parties to the mortgage operated under a mutual mistake of fact, i.e., that the legal description in the mortgage secured the note to the full extent of the Madisons' property. See *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 440-442; 716 NW2d 247 (2006); *Casey v*

*Auto-Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006).[5]  And such a mutual mistake would ordinarily support reformation of the mortgage.  See *Scott v Grow*, 301 Mich 226, 239-240; 3 NW2d 254 (1942); *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008); *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 24; 592 NW2d 379 (1998).  We are also of the opinion that the doctrine of laches did not preclude OneWest's equitable action, as Malhotra failed to establish the requisite prejudice.  See *Attorney General v Powerpick Player's Club of Mich, LLC*, 287 Mich App 13, 51; 783 NW2d 515 (2010).[6]

Nevertheless, and even assuming that an affiant can effectively set aside a sheriff's deed and foreclosure sale under MCL 565.451a by simply recording an affidavit of expungement, OneWest's lawsuit was still properly dismissed, as it lacked standing, as would FFA, even if FFA had been made a party plaintiff by way of the proposed amended complaint.[7]

---

[5] This was not a case of a unilateral mistake; rather, there was a mutual mistake of fact regarding the legal description of the property that was intended to secure the loan or line of equity. Indeed, there was *no* evidence to the contrary regarding intent.  There was an erroneous belief, which was shared and relied on by the parties to the loan and mortgage, about a material fact – the actual legal description of the Madisons' property – that affected the substance of the loan and mortgage transaction.  *Ford Motor Co*, 475 Mich at 442.  It is nonsensical to conclude, in the context of a transaction extending credit well in excess of a quarter of a million dollars, that the parties to the reverse mortgage intended that the promissory note be secured by a 2 ½-acre vacant parcel erratically carved out of the 160 acres of land owned by the Madisons and to the exclusion of their house.

[6] The *only* prejudice claimed by Malhotra in her appellate brief was that the delay in filing the reformation suit "abolished Malhotra's ability to obtain the testimony of her grandparents, Donald and Anna Madison," with respect to showing their intent at the time the mortgage was executed.  This argument of prejudice has absolutely no merit.  Anna was already incapacitated at that time, with Malhotra serving as her guardian and conservator, and both Anna and Donald were long deceased by the time of the foreclosure proceedings in 2010 and the subsequent discovery of the scrivener's error in 2011, at which time the suit should have been pursued. Thus, even had a reformation action been timely filed, Anna and Donald would not have been available to testify.

[7] With respect to the expungement affidavit recorded under MCL 565.451a, MCL 565.453 provides that an "affidavit, whether recorded before or after the passage of this act, may be received in evidence in any civil cause, in any court of this state and by any board or officer of the state in any suit or proceeding affecting the real estate and shall be *prima facie evidence* of the facts and circumstances therein contained."  (Emphasis added.)  "Prima facie evidence" is evidence that will sustain a judgment or establish a fact unless contradictory evidence is produced; it "creates a presumption that may be rebutted by contradictory evidence." *Dep't of Environmental Quality v Worth Twp*, 491 Mich 227, 239 n 25; 814 NW2d 646 (2012).

In *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, __ Mich App __; __ NW2d __, issued November 18, 2014 (Docket No. 313296), slip op at 4, this Court discussed foreclosure by advertisement and the impact on the underlying mortgage, stating in relevant part:

> Foreclosure of a mortgage containing a power of sale is permissible by advertisement provided the proceedings are instituted in accordance with the statute. *A foreclosure of a mortgage extinguishes it* and the purchaser becomes the owner of an equitable interest in the mortgaged premises which ripens into a legal title if not defeated by redemption as provided by law. Statutory foreclosures should not be set aside without some very good reasons therefor. A strong case of fraud, irregularity, or some peculiar exigency is required to set aside a statutory foreclosure sale.

> It is undisputed that the MERS mortgage was foreclosed by advertisement, that Fannie Mae purchased the property at a foreclosure sale and received a sheriff's deed for the property, and that the property was never redeemed. *The foreclosure extinguished the MERS mortgage* and, because the property was not redeemed, all rights, title, and interest in the property vested in Fannie Mae. [Citations, ellipsis, and quotation marks omitted; emphasis added.]

Accordingly, as a starting point here, the reverse mortgage would have been deemed extinguished after expiration of the redemption period, with FFA holding full legal title in regard to the 2 ½ acres of land that it purchased at the foreclosure sale for $275,223. That said, generally speaking, if fraud, accident, mistake, or some type of irregularity is established, it may warrant setting aside a foreclosure sale. *Senters v Ottawa Savings Bank*, 443 Mich 45, 55-57; 503 NW2d 639 (1993); *Kubicki v Mtg Electronic Registration Sys*, 292 Mich App 287, 289; 807 NW2d 433 (2011); *Sweet Air Investment, Inc v Kenney*, 275 Mich App 492, 497; 739 NW2d 656 (2007); *Freeman v Wozniak*, 241 Mich App 633, 637-638; 617 NW2d 46 (2000). And as noted above by the *Trademark Props* panel, "[a] strong case of fraud, irregularity, or some peculiar exigency is required to set aside a statutory foreclosure sale." *Trademark Props*, slip op at 4; see also *Sweet Air Investment*, 275 Mich App at 497 (stating that the Michigan Supreme Court has long held this position), citing, in part, *Detroit Trust Co v Agozzinio*, 280 Mich 402, 405-406; 273 NW 747 (1937), and *Calaveras Timber Co v Mich Trust Co*, 278 Mich 445, 450; 270 NW 743 (1936).

However, within the past year, this Court issued *Bryan v JPMorgan Chase Bank*, 304 Mich App 708; 848 NW2d 482 (2014), which addressed the issue of standing in the context of an attempt to set aside a foreclosure sale. In *Bryan*, the plaintiff mortgagor argued that, despite the

---

Therefore, even in the context of litigation, an affidavit recorded under MCL 565.451a cannot conclusively establish a fact *if challenged*, yet OneWest appears to maintain that the mere recording of such an affidavit can conclusively result in the setting aside of a sheriff's deed and foreclosure sale regardless of any competing or conflicting claim or contradictory argument. Given that litigation arose here, it seems beyond reasonable dispute that under MCL 565.453, the affidavit at most gave rise to a rebuttable presumption of expungement.

expiration of the redemption period, "she still had standing to sue because of 'fraud or irregularity' in the foreclosure process." *Id.* at 711. This Court rejected the argument, ruling:

> Pursuant to MCL 600.3240, after a sheriff's sale is completed, a mortgagor may redeem the property by paying the requisite amount within the prescribed time limit, which here was six months. "Unless the premises described in such deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter . . . ." MCL 600.3236. If a mortgagor fails to avail him or herself of the right of redemption, all the mortgagor's rights in and to the property are extinguished. *Piotrowski v State Land Office Bd*, 302 Mich 179, 187; 4 NW2d 514 (1942).
>
> We have reached this conclusion in a number of unpublished cases and, while unpublished cases are not precedentially binding, MCR 7.215(C)(1), we find the analysis and reasoning in each of the following cases to be compelling. Accordingly, we adopt their reasoning as our own. See *Overton v Mtg Electronic Registration Sys*, unpublished opinion per curiam of the Court of Appeals, issued May 28, 2009 (Docket No. 284950), p 2 ("The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity. Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished.") (citation and quotation marks omitted); *Hardwick v HSBC Bank USA*, unpublished opinion per curiam of the Court of Appeals, issued July 23, 2013 (Docket No. 310191), p 2 ("Plaintiffs lost all interest in the subject property when the redemption period expired . . . . Moreover, it does not matter that plaintiffs actually filed this action one week before the redemption period ended. The filing of this action was insufficient to toll the redemption period. . . . Once the redemption period expired, all plaintiffs' rights in the subject property were extinguished."); *BAC Home Loans Servicing, LP v Lundin*, unpublished opinion per curiam of the Court of Appeals, issued May 23, 2013 (Docket No. 309048), p 4 ("[O]nce the redemption period expired, [plaintiff's] rights in and to the property were extinguished. . . . Because [plaintiff] had no interest in the subject matter of the controversy [by virtue of MCL 600.3236], he lacked standing to assert his claims challenging the foreclosure sale."); *Awad v Gen Motors Acceptance Corp*, unpublished opinion per curiam of the Court of Appeals, issued April 24, 2012 (Docket No. 302692), pp 5-6 ("Although she filed suit before expiration of the redemption period, [plaintiff] made no attempt to stay or otherwise challenge the foreclosure and redemption sale. Upon the expiration of the redemption period, all of [plaintiff's] rights in and title to the property were extinguished, and she no longer had a legal cause of action to establish standing."). We hold that by failing to redeem the property within the applicable time, plaintiff lost standing to bring her claim. [*Bryan*, 304 Mich App at 713-715 (alterations in original).]

By analogy, the holder of any mortgage interest would likewise lack standing to set aside a foreclosure sale, considering that the mortgagee's mortgage interest, just as a mortgagor's property interest, has been extinguished by the time the redemption period expires. It is important to appreciate that if a mortgagee were permitted to set aside a foreclosure sale after expiration of the redemption period, doing so would also necessarily breathe new life into the mortgagor's extinguished property interest, resurrecting that property interest in direct conflict with *Bryan*. Accordingly, based on the doctrine of standing as viewed by the *Bryan* panel, any claims of fraud, mistake, irregularities, accident, or a peculiar exigency as a basis to set aside a foreclosure sale cannot be pursued post-expiration of the redemption period, whether by a mortgagor or a mortgagee. With respect to the affidavit of scrivener's error and affidavit to expunge sheriff's deed, they were not recorded until *after* the redemption period had expired. It is undisputed that no lawsuit or affidavit seeking to set aside the sheriff's deed or foreclosure sale was filed or recorded before the conclusion of the redemption period. If a lawsuit to set aside the foreclosure sale could no longer be pursued by the time the affidavits were recorded, the affidavits themselves certainly could no longer effectuate the setting aside of the foreclosure sale.[8] This rationale effectively disposes of OneWest's reformation claim, as one cannot reform a mortgage that no longer exists and OneWest lacks standing, as would FFA, to set aside the foreclosure sale and resurrect the mortgage such that it could be reformed.

Additionally, "[a] party seeking the aid of equity must come in with clean hands." *McFerren v B & B Investment Group*, 253 Mich App 517, 523; 655 NW2d 779 (2003). The clean hands doctrine closes the door of equity to a party tainted with inequitableness or bad faith with respect to the matter in which the party seeks relief. *Id.* at 523-524. The clean hands doctrine is rooted in the historical concept that courts of equity are vehicles for enforcing the requirements of conscience and good faith. *Isbell v Brighton Area Schools*, 199 Mich App 188, 190; 500 NW2d 748 (1993). Having unclean hands can bar a plaintiff from receiving equitable relief, *id.*, which would include reformation of a mortgage.

Again, OneWest fails to present an argument on appeal challenging this aspect of the trial court's ruling. Moreover, we conclude that OneWest sought reformation with unclean hands. It accepted the assignment of mortgage knowing of the scrivener's error, constructively knowing of the quitclaim deed conveying the entire parcel to Malhotra, and knowing that the foreclosure proceedings had concluded, with expiration of the redemption period occurring more than a year before the assignment absent any litigation to resolve conflicting interests. Thus, OneWest bought or stepped into the mess with eyes wide open. Even then, OneWest delayed filing a complaint for 18 months, and when it did file the complaint, OneWest failed to make any mention of the foreclosure proceedings. Also, OneWest stood in the shoes of its predecessors, and those predecessors failed to take due care in examining the legal descriptions and recorded documents concerning the property when assigning and foreclosing on the mortgage. And we question the appropriateness of FFA's attempt to unilaterally alter the legal description in the

---

[8] Again, this is assuming that the recording of an affidavit in and of itself can generally void a foreclosure, which we question, especially in the context of a situation where there are conflicting interests and positions.

mortgage by a self-serving affidavit, which OneWest would or should have been aware of when it accepted the assignment. In sum, OneWest acted with unclean hands and was not entitled to any equitable relief.

Finally, we address OneWest's argument regarding amendment of the complaint. When a court grants summary disposition pursuant to MCR 2.116(C)(10), the court must provide the losing party with an opportunity to amend the party's pleadings under MCR 2.118, except where any amendment would be futile under the circumstances. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997), citing MCR 2.116(I)(5). Leave to amend a pleading must be freely given when justice so demands, and a motion to amend should ordinarily be granted unless there exists undue delay, bad faith or a dilatory motive, repeated failures to cure deficiencies with prior amendments, undue and actual prejudice, or futility. *Weymers*, 454 Mich at 658-659.

On appeal, the only substantive argument made by OneWest concerns the addition of a count to set aside the foreclosure sale as proposed in the amended complaint. OneWest fails to address any of the other additional counts (equitable mortgage, unjust enrichment, etc.) that it had raised in the proposed amended complaint; therefore, we need not bother with considering those causes of action in the context of whether amendment should have been allowed. With respect to setting aside the foreclosure sale, we have substantively addressed and rejected that claim in the context of the reformation action, so the issue is now essentially moot and any amendment to specifically add that claim would be futile.

Affirmed. Having fully prevailed on appeal, Malhotra is awarded taxable costs under MCR 7.219.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra

-13-