*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TONI WILLIAMS,

      Plaintiff-Appellant,

UNPUBLISHED
June 4, 2020

v

No. 346875
Wayne Circuit Court
LC No. 17-016051-NF

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

      Defendant-Appellee.

Before: LETICA, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Plaintiff, Toni Williams, appeals as of right[1] the trial court's order granting defendant, Nationwide Mutual Fire Insurance Company, summary disposition on plaintiff's claim for no-fault benefits under MCR 2.116(C)(10) (no genuine issue of material fact) because plaintiff submitted false information in support of her claim. We affirm. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

## I. BACKGROUND

In December 2016, a car struck plaintiff while she was crossing a street on foot, causing her severe injuries. Because the driver who struck plaintiff was uninsured, plaintiff filed an application for Personal Injury Protection (PIP) benefits with the Michigan Automobile Insurance Placement Facility (the MAIPF) in January 2017. The MAIPF assigned plaintiff's claim to defendant thereafter.

After her release from the hospital, physicians informed plaintiff that she would require 12 hours of attendant care services per day. Plaintiff's two daughters, Daphne and Tiffany, agreed to

---

[1] We previously denied defendant's motion to dismiss plaintiff's appeal. *Williams v Nationwide Mut Fire Ins Co*, unpublished order of the Court of Appeals, entered March 20, 2019 (Docket No. 346875).

each provide six hours of attendant care per day. In support of her claim for reimbursement of those attendant-care services, plaintiff submitted two affidavits of attendant care, which reflected that this arrangement was in place from February 14, 2017 through August 31, 2017. The affidavits also reflected that plaintiff agreed to pay each daughter $15 per hour for the attendant care provided. Both Daphne and Tiffany signed the notarized affidavits on September 20, 2017, and plaintiff signed that she acknowledged them on October 4, 2017.

In addition to the two affidavits, plaintiff submitted a more detailed accounting of the attendant care services she received from Daphne in 2017, on forms provided by Home Health Care Services of Michigan. These forms reflected a detailed accounting of the dates and times during which Daphne provided attendant care services to plaintiff from January through May 2017. These forms generally reflected that Daphne provided 8 hours of daily care from 6 a.m. to 2 p.m., with some days off, and occasionally provided 16 hours of daily care from 6 a.m. until 10 p.m. on weekends. On three of the ten forms, both plaintiff and Daphne signed on the last day of the time period reflected. On six forms, plaintiff signed on the last day of the time period reflected and Daphne signed later, but always by the end of the month. And, on one form, plaintiff signed in the middle of the period for which services were provided while Daphne provided the dates of the time period reflected.

During her deposition in August 2018, Daphne testified that she worked as a line cook at the airport between 2 p.m. and 8 or 9 p.m., four or five days a week and on occasional weekends. For the period between February 14 and August 13, 2017, Daphne testified that, while she had no "set schedule," she would usually care for plaintiff in the morning, typically around 8 or 9 a.m. Daphne then testified that she stayed with plaintiff until plaintiff's transportation arrived at 11 a.m. or noon. After Daphne ended her shift at the airport, she would return to plaintiff's home, at about 9 or 10 p.m., and continue to provide attendant care services to plaintiff.

Daphne confirmed that she had signed the Home Health Care forms provided by plaintiff, filled them out, and witnessed plaintiff signing them. Consistent with the Home Health Care forms, Daphne testified that she arrived at 6 a.m. and left at 2 p.m. on the days she reported in the forms. Daphne further testified that she simply told her employer that she "might be late." Daphne also testified that she occasionally cared for plaintiff for 16 hours on some days. Daphne confirmed that the Home Health Care form and the affidavit submitted to defendant were inconsistent with each other, and that it was likely the affidavit, not the more detailed form, was accurate.

During plaintiff's deposition, plaintiff likewise testified that Daphne and Tiffany did not have a set schedule for when they provided attendant care; instead, they cared for her when they could. Plaintiff confirmed that she signed the affidavits of attendant care to acknowledge their accuracy, and, when presented with them during her deposition, plaintiff confirmed that they were accurate. Plaintiff also testified that the signatures on the Home Health Care forms appeared to be hers, but claimed not to remember the forms themselves. Plaintiff also confirmed that the Home Health Care forms were not accurate and that the affidavits were accurate.

Plaintiff filed a complaint for no-fault benefits when defendant denied her coverage. After discovery, defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was barred from receiving benefits under MCL 500.3173a because she made materially

-2-

false statements in support of her application for benefits to the MAIPF. The trial court granted defendant's motion and determined that plaintiff was ineligible for any no-fault benefits after concluding that the accounting of Daphne's attendant care services was a fraudulent insurance act.

This appeal followed.

## II. DISCUSSION

On appeal, plaintiff argues that the trial court erred in granting summary disposition because there were still genuine issues of material fact as to whether she had knowledge of her misrepresentations to defendant and whether those misrepresentations were material to plaintiff's claim for no-fault benefits. We disagree.

### A. STANDARD OF REVIEW

"A trial court's decision regarding a motion for summary disposition is reviewed de novo." *Sullivan v Michigan*, 328 Mich App 74, 80; 935 NW2d 413 (2019). "Under MCR 2.116(C)(10), summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks omitted). We "must review the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Id*. (quotation marks omitted). And, all reasonable inferences arising from the circumstantial evidence must be construed in favor of the non-movant. *West v Gen Motors Corp*, 469 Mich 177, 183-184; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Piccione*, 327 Mich App at 19 (quotation marks omitted). A court may not "make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Id*. (quotation marks and emphasis omitted). Nor may the court weigh credibility in deciding a summary disposition motion. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

We review questions of statutory interpretation de novo. *Edw. C. Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 339; 810 NW2d 621 (2011). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010). The best indicator of the Legislature's intent is the statute's language, which, if clear and unambiguous, we must apply as written. *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 438-439; 716 NW2d 247 (2006).

### B. ANALYSIS

We conclude that the trial court properly granted summary disposition to defendant because plaintiff committed a fraudulent insurance act when she submitted false information in support of her claim for no-fault benefits. There was no genuine issue of material fact that plaintiff had knowledge that the Home Health Care forms Daphne prepared and plaintiff signed contained false information at the time she submitted them in support of her claim. Additionally, the Home Health Care forms reflecting the times and dates Daphne provided attendant care services to plaintiff were material to plaintiff's claim for benefits because they were related to the payment both of her daughters would have received from defendant.

-3-

In pertinent part, the No-Fault Act[2] stated:

> A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.4503] that is subject to the penalties imposed under [MCL 500.4511]. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment or benefits under the assigned claims plan. [MCL 500.3173a(2).]

We have held that "a person commits a fraudulent insurance act under this statute when (1) the person presents or causes to be presented an oral or written statement, (2) which is part of or in support of a claim for no-fault benefits, (3) where the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim." *Candler v Farm Bureau Mut Ins Co*, 321 Mich App 772, 780; 910 NW2d 666 (2017) (footnote omitted). "MCL 500.3173a(2) does not require that any particular recipient have received the false statement in order for the act to qualify as a fraudulent insurance act, as long as the statement was used as part of or in support of a claim to the MAIPF." *Id*. (quotation marks and alterations omitted). The insurer bears the burden of demonstrating that the plaintiff committed a fraudulent insurance act. See *Mina v Gen Star Indem Co*, 218 Mich App 678, 681-682; 555 NW2d 1 (1996), rev'd in part on other grounds, 455 Mich 866; 568 NW2d 80 (1997).

In *Candler*, we determined that the plaintiff knew that the calendars he submitted to the MAIPF regarding his replacement services were inaccurate because he had signed or forged his brother's name onto them. *Candler*, 321 Mich App at 781-782. We noted that the plaintiff's counsel conceded that the plaintiff had done so and that the record demonstrated it was factually impossible for the documents to be correct because the plaintiff had moved in with his girlfriend, who had begun to provide the replacement services. *Id*. at 781. We concluded that, despite the presence of the plaintiff's head injury, no reasonable jury could have concluded that the plaintiff was unaware that he was submitting false information in support of his claim. *Id*. at 781-782.

In this case, plaintiff first takes issue with the trial court's ruling that defendant proved the fourth prong of the *Candler* test—that plaintiff knew that the information Daphne had provided in the Home Health Care forms, which, in turn, plaintiff had provided in support of her claim for no-fault benefits, was false. *Candler*, 321 Mich App at 780. Plaintiff relies on caselaw in the context of insurance companies seeking to void a policy due to the policyholder's fraudulent action to generally assert that defendant here was required to prove both knowledge *and* an intent to defraud.

---

[2] Plaintiff's claim was submitted and the trial court rendered its decision before the effective date of the 2019 amendments to the No-Fault Act. Under the current No-Fault Act, MCL 500.3173a(2) was redesignated MCL 500.3173a(4) and language was added. 2019 PA 21, effective June 11, 2019.

-4-

See, e.g., *Mina*, 218 Mich App at 686 (stating that fraud "implies something more than mistake of fact or honest misstatements on the part of the insured . . . the insurer must prove not only that the [representation] was false, but also that it was done knowingly, wilfully [sic], and with intent to defraud"). However, the plain language of MCL 500.3173a(2) contains no such element of intent. *Woodhaven*, 475 Mich at 438-439. It clearly provides that "[a] person who presents or causes to be presented a[] . . . written statement . . . as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act . . . ." MCL 500.3173a(2). Thus, as we concluded in *Candler*, this statute only requires that the plaintiff "must have known that the statement contained false information." *Candler*, 321 Mich App at 780. Accordingly, we reject plaintiff's interpretation of this statute.

In this case, there is no genuine issue of material fact regarding plaintiff having knowledge that the Home Health Care forms Daphne prepared and that plaintiff later signed and used to support her claim for no-fault benefits contained falsehoods. Although plaintiff did not outright prepare the forms, she admitted to signing them during her deposition. And although she said that she did not remember the Home Health Care forms, which are the forms that contained the falsehoods according to plaintiff's and Daphne's deposition testimony, plaintiff confirmed that the signatures on all ten forms were hers and that the contents of the forms were inaccurate. There is no reasonable inference to draw on this record that plaintiff could have lacked knowledge that the forms were false at the time she submitted them and that, at the time of her deposition, over a year later, she had only just remembered that they were false. Moreover, both Daphne and plaintiff's husband indicated that plaintiff coordinated with the insurance company to ensure their payments. This provides strong circumstantial evidence that plaintiff reviewed each form she submitted and would have been aware of any falsehoods. And although plaintiff signed the accurate affidavits in October 2017, which was some time after attendant care allegedly stopped in August 2017, plaintiff signed the inconsistent and false Home Health Care forms around the same time that Daphne prepared each one. Thus, it stands to reason that plaintiff was aware at the time that she signed and submitted the forms that they were inaccurate.

Plaintiff notes that, unlike the plaintiff in *Candler*, the documents she submitted were prepared by a third-party and only contained inconsistencies, not outright forgeries. Plaintiff thus contends that fraud was not apparent at the summary disposition stage. This assertion lacks merit. As the trial court noted, any false statement submitted in support of a claim is a fraudulent insurance action, regardless of whether it is a forgery or inconsistent with other documents. And, as discussed above, although Daphne prepared the forms, the record reflects that plaintiff reviewed and signed them before she submitted them in support of her claim.

Additionally, referring to Daphne's Home Health Care forms as merely inconsistent with the other submitted documents is inaccurate. The deposition testimony from both plaintiff and Daphne establishes that the Home Health Care forms contained false accountings of the times Daphne provided care to plaintiff. Daphne initially testified that she provided approximately three to four hours of care in the mornings and early afternoons before starting her shift at the airport, and then provided care in the evenings, for a total of six hours a day. The record also reflects that Daphne alternated weekends with her sister in providing full days of care for plaintiff. Plaintiff's husband and Tiffany also confirmed this. However, the Home Health Care forms often indicated that Daphne provided care early in the morning until her shift at the airport started, and, in fact,

provided care for eight hours a day. The forms also do not reflect a pattern of Daphne coming back to take care of plaintiff at night after she finished working at the airport. The forms also do not reflect any gap in time accounting for the third-party transportation of plaintiff to her doctors' appointments. Daphne and Tiffany both testified that plaintiff was transported to her doctors' appointments in the morning. According to Daphne plaintiff's transportation arrived around 11 a.m. to noon, and, according to Tiffany, plaintiff would return around 1:30 p.m. This information regarding Daphne and plaintiff's schedule also conflicts with the Home Health Care forms that consistently show Daphne caring for plaintiff from 6 a.m. until 2 p.m. And, while Daphne, Tiffany, and plaintiff all testified that their schedules varied, the Home Health Care forms reflect Daphne consistently provided plaintiff with care.

Moreover, it is notable that Daphne altered her testimony after the forms were presented to her at the deposition, and eventually admitted that the forms were inaccurate. Tiffany's deposition testimony likewise began at 16 hours of daily attendant care services before falling to 12 hours. Thus, beyond a mere inconsistency, the forms were admittedly an outsized false accounting of the time Daphne spent providing plaintiff with care, as opposed to the time Tiffany and Daphne were supposedly sharing 12 hours of daily care in total.

This is similar to the calendar that the *Candler* plaintiff submitted, reflecting the wrong person providing replacement services. Here, too, Daphne could only be paid for the times that she, as opposed to Tiffany, provided care. And, much like factual impossibility present in *Candler*, Daphne could not provide care to plaintiff while she was also supposed to be working at the airport—as her initial deposition testimony reflected—or while a third-party transported plaintiff to her doctors' appointments.

Lastly, plaintiff indicates that her injuries prevented her from fully understanding what she was signing. Though plaintiff initially denied any head trauma as a result of the accident, she testified that she was receiving treatment from a neurologist who told her she had a working diagnosis of a brain injury. Plaintiff also testified that she experienced occasional confusion, trouble concentrating, and memory loss, which could have resulted from the aging process or the accident. While this evidence demonstrates that plaintiff had intermittent confusion and memory loss of an undefinable origin, it does not establish that plaintiff was unable to review or lacked the cognitive ability to provide a signature reflecting her review of the ten Home Health Care forms spanning five months. Moreover, this Court in *Candler* rejected the plaintiff's contention that a head injury negated his fraudulent insurance act. 321 Mich App at 781-782. While plaintiff here did not actively forge a signature, and, instead, signed off on false information, there is no record evidence suggesting that plaintiff was unaware of or unable to appreciate that Daphne's forms contained falsehoods at the time that plaintiff signed them. Thus, the trial court correctly determined that plaintiff had knowledge that the forms she submitted in support of her claim for no-fault benefits contained false information.

Plaintiff next challenges the establishment of the fifth *Candler* prong—whether any false statements were material to her claim for benefits. *Candler*, 321 Mich App at 780. "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Mina*, 218 Mich App at 686. A statement is material if it is more likely to be one of the pieces of information relied upon. *US Fid & Guar Co v Black*, 412 Mich 99, 121; 313 NW2d 77 (1981).

Here, the false statements plaintiff submitted were material to defendant's investigation of her claim. Although there is no dispute that plaintiff was entitled to 12 daily hours of attendant care, how that money was paid out was material to her claim. Specifically, although the total plaintiff requested reflected 12 hours a day of attendant care at a rate of $15 per hour, that care was supposed to be split evenly between plaintiff's two daughters. And, as Daphne reflected in the more detailed Home Health Care forms that she had often provided eight hours of daily care, that could have impacted the total amount of money Tiffany received. Moreover, Tiffany's affidavit reflected that she provided six hours of care a day and defendant could have relied on the Home Health Care forms to calculate Daphne's compensation. In that case, the total amount of money defendant would have had to pay for plaintiff's attendant care services would have exceeded 12 hours per day. Because the forms submitted were related to the hours that Daphne would be paid for her attendant care services, they were material to defendant's investigation of plaintiff's claim.

In sum, we conclude that the trial court properly denied plaintiff no-fault benefits after it determined that there was no genuine issue of material fact regarding plaintiff's commission of a fraudulent insurance act.

Affirmed.

/s/ Anica Letica
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien

-7-